THE CHICAGO & ST. LOUIS RAILROAD COMPANY

v.

MARY ASHLING, ADM'X, ETC.

*Railroads—Action for Death Caused by Alleged Negligence of—Evidence—Res Gestæ—Declarations or Admissions of General Officers of Corporation—When Admissible—Heads of Subordinate Departments—Instruction—Damages.*

1. Declarations of an agent or servant made in the discharge and line of his duty, and in the immediate connection of the doing of some act in the line of his duty, and which relate to what he is doing, so as to become a part of the act or *res gestæ*, are competent evidence against the principal, when the act done becomes the subject of judicial inquiry; otherwise, when they do not form a part of the transaction involved.

2. Declarations of a president or general officer of a corporation, to bind the corporation, must be so intimately connected with the discharge of some duty required of him by virtue of his office, that such declarations are part of the *res gestæ*.

3. In an action against a railroad company to recover damages for death of plaintiff's intestate, alleged to have been caused by the use, by defendant, of a locomotive with a defective boiler, this court holds that declarations made by defendant's master mechanic and an officer having general supervision of all matters pertaining to defendant's machinery, track, buildings, bridges, etc., several days after the accident, in regard to the condition of the boiler in question, were not admissible.

4. In the case presented, it is held that an instruction given for plaintiff was bad; first, in not limiting the plaintiff's right of recovery to the pecuniary damage suffered; second, in not limiting the right of recovery to what was shown by the evidence; and third, in not submitting to the jury the question of deceased's knowledge, or want of knowledge, of the alleged dangerous condition of the boiler.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of La Salle County; the Hon. DORANCE DIBELL, Judge, presiding.

Messrs. WALTER REEVES and DUNCAN & GILBERT, for appellant.

The trial court erred in admitting improper evidence on the part of plaintiff below.

As appeared, the explosion took place on February 23, 1886, at a point several miles distant from Streator, and on February 27th, four days thereafter, the witness, John T. Corbett, left Aurora for Streator, and claims that on said last named date to have examined the engine in controversy in Streator. He never saw the engine before, and notwithstanding the lapse of time and distance from the date and place of the explosion, and the remoteness of time and place from the *res gestæ*, he is permitted to testify to

C. & St. L. R. R. Co. v. Ashling.

conversations with and statements made by Crocker and Heckman in Streator, on February 27th.

This evidence was clearly inadmissible. Michigan Central R. R. Co. v. Gougar, 55 Ill. 503; C., B. & Q. R. R. Co. v. Lee, 60 Ill. 501; C., B. & Q. R. R. Co. v. Riddle, 60 Ill. 534; Burgess v. Inhabitants of Wareham, 7 Gray, 347; Kalamazoo Mfg. Co. v. McAllister, 36 Mich. 327; Mich. Central R. R. Co. v. Coleman, 28 Mich.; Packet Co. v. Clough, 20 Wall. 528; Benner v. Feige, 51 Mich. 568; Grinnell v. W. U. Tel. Co., 113 Mass. 299; Pratt v. O. & L. C. R. Co., 102 Mass. 565; Lane v. Bryant, 9 Gray, 247; Cortland Co. v. Herkimer Co., 44 N. Y. 24; First Nat. Bank v. Ocean Nat. Bank, 60 N. Y. 278.

The court below erred fatally in instructing the jury on the part of defendant in error.

Counsel for defendant in error saw fit to propound to the jury their whole case, including the measure of damages in their first instruction.

*First. It is radically vicious in the attempt to state a measure of damages applicable to this case.* Freeport v. Isbell, 83 Ill. 440; Martin v. Johnson, 89 Ill. 537; C., B. & Q. R. R. Co. v. Sykes, 96 Ill. 162; Rolling Mill Co. v. Morrissey, 111 Ill. 646; East St. L. & C. Ry. Co. v. Frazier, 19 Ill. App. 92; McGinnis v. Berven, 16 Ill. App. 357; James v. Johnson, 12 Ill. App. 286; Illinois Stock Yards & Transit Co. v. Monoghan, 13 Ill. App. 148.

*Secondly. The instruction ignores entirely the element of knowledge of defect on the part of deceased.* C., R. I. & P. R. R. Co. v. Clark, 11 Ill. App 104; Morris v. Gleason, 1 Ill. App. 510.

*Thirdly.* The instruction also ignores the element of knowledge of defect on the part of the defendant corporation.

A servant can not recover of his employer, damages for an injury received while in the discharge of his duty, from a defect in machinery, without showing that the employer had knowledge, or by the use of reasonable diligence might have had knowledge of the defect. E. St. L. Pkge. Co. v. High-

town, 92 Ill. 139; C. & A. R. Co. v. Platt, 89 Ill. 141; T., W. & W. v. Ingraham, 77 Ill. 309; C. & A. R. R. v. Stites, 20 Ill. App. 648; Kranz v. White, 8 Ill. App. 583; C. & E. I. v. Hagan, 11 Ill. 498.

It will no doubt be urged in answer to these last two points made against this instruction, that the instructions asked by, and given on behalf of defendant below, stated the law fully and correctly as to knowledge, both on the part of deceased and the railway company. Our reply to that is, that in this case that fact does not cure the vice of this instruction. It will be noticed that counsel for plaintiff below made this instruction the complete embodiment of their case. It proposed to the jury every alleged hypothesis upon which plaintiff claimed the right to recover, and the extent of such recovery. It was wrong and misleading in every of its features. For, if there was and could be no cure, except its entire refusal, it was made an independent, important, controlling and complete submission of the case to the jury, and the jury were thereby at liberty to adopt it (as they, beyond doubt, did,) as an alternative basis of disposing of the case independently of, and unrestricted by the theories of law contained in the instructions of plaintiff in error. This is the common sense, the human logic of the situation. Morris v. Gleason, 1 Ill. App. 516.

Messrs. CHARLES WHEATON and RICHOLSON & SEELEY, for appellee.

Corporations can only act through their officers, and the acts and declarations of such officers are always part of the *res gestæ* as to such corporations.

It will be noticed that Crooker was at the time of the declarations in question the general superintendent of the railroad company, and he and Heckman were at the time of the conversation in question, inspecting the boiler to determine what was the trouble with it. They were there with Corbett and McDaniels examining the boiler. That was the *res gestæ*, the transaction in which they were then engaged, and which they then had authority to engage in. Any decla-

C. & St. L. R. R. Co. v. Ashling.

ration then made by them in the course of the investigation, with regard to it, or as part thereof, was as much *res gestœ* as any other act or transaction done by the principal officer of a corporation, who has general superintendence of its business, could be, and their declarations or admissions, with regard to the matter then under investigation were competent and admissible, and they were really part of the *res gestœ*.

It will be noticed, the declaration made by them was not a declaration pertaining to a past transaction, but was an expression with regard to what was then before them and which they saw in the course of the examination which they were then making as officers of the company.    Mix v. Osby, 62 Ill. 193;  C., B. & Q. R. R. Co. v. Coleman, 18 Ill. 297; Merchants etc., Co. v. Leyson, 89 Ill. 43;  Wallan v. Goold, 91 Ill. 15; Cook v. Commissioners, 1 Gilm. 537; T., W. & W. R. R. Co. v. Rodrigues, 47 Ill. 191;  O. & M. Ry. Co. v. Porter, 92 Ill. 437; McConnell v. Hannah, 96 Ind. 102;  Bartlett v. Fireman's Fund Ins. Co. 41 North Western Rep. 601;  McPherrin v. Jennings, 66 Ia. 622;  Ayers v. Hubbard, 40 North Western Rep. 10.

If the first instruction was technically wrong as to the measure of damages, no injustice could have been done, as we claim, because the jury were warranted by the evidence in finding the amount which they found.

If this is so, the verdict will not be set aside on account of the amount although this instruction was erroneous.

The giving an instruction clearly erroneous is not a cause for reversal where it appears that it worked no injury to the party complaining.    Andes Ins. Co. v. Fish, 71 Ill. 620;  Race v. Oldridge, 90 Ill. 250;  Reynolds v. Greenbaum, 80 Ill. 516; Stickle v. Otto, 86 Ill. 161;  Potter v. Potter, 41 Ill. 86; Jarrard v. Harper, 42 Ill. 457;  Rankin v. Taylor, 49 Ill. 451.

Although an instruction may be faulty in directing the jury as to the assessment of damages, yet when the verdict is just and fully warranted by the evidence as to the damages found the judgment will not be reversed.    C. & W. I. R. R. Co. v. Dooling, 95 Ill. 202.

Where an instruction professes to set forth the rule fixing

the liability of a party and omits an essential element to such liability, but such omission is so clearly supplied by the proof in the case that the error could work no injury, the judgment will not be reversed because of such erroneous instruction. Clarke v. Boyle, 51 Ill. 104.

Here the evidence clearly shows that plaintiff's pecuniary damage exceeded $5,000.

Secondly. It is claimed that the instruction is erroneous because it ignores the element of knowledge of the defect on the part of the deceased.

That point is not well taken.

First. The jury are told in the instructions that the deceased must have been in the exercise of ordinary care in the use of the locomotive and boiler, and that was all that was necessary to state in that instruction.

It is not necessary that the instructions should cover or include every possible element. I. & St. L. R. R. Co. v. Estes, 96 Ill. 472; M. & St. P. R. R. Co. v. Dowd, 115 Ill. 659.

It is also objected that the instructions ignore the element of knowledge of a defect on the part of the defendant.

It seems to us that point is sufficiently covered in the instruction. In that the jury are told that they must believe from the evidence that the boiler was out of repair and defective through the carelessness of the defendant, so that it was unsafe and caused such explosion.

If the defendant did not know of the defect and could not have known of the same by the exercise of ordinary diligence, then the boiler was not defective through his carelessness.

The jury could not have been misled by this instruction on either the last two points complained of. For, not only does the instruction concisely state what the jury must believe from the evidence in order for the plaintiff to recover, to wit, that the boiler was out of repair and defective through the carelessness of defendant so that it is unsafe, and caused the explosion, and that the deceased at the time must have been using ordinary care in running and use of the locomotive and boiler, (ordinary care being defined in the second instruction for plaintiff,) but the jury were told over and over again

in the instructions for the defendant that the plaintiff was not entitled to recover unless the defect in the machinery could, by the use of ordinary and reasonable care, be detected by the employer, and that the plaintiff could not recover if the deceased had knowledge of such defect.

There were twenty-nine instructions given on the part of the defendant, and these principles were reiterated over and over again in them.

Where there is an omission in the plaintiff's instructions which is fully supplied by defendant's instructions, so that the jury could not have been misled, the judgment will not be reversed. Cunningham v. Stein, 109 Ill. 376; C. & A. R. R. Co. v. Johnson, 116 Ill. 206.

C. B. Smith, J. This was an action on the case brought by appellee as administratrix of the estate of her deceased husband, Edward W. Ashling, against appellant, to recover damages on account of the death of her husband caused by the alleged negligence of appellant. The declaration is not abstracted, but as no question is made as to its sufficiency, and no question arises under it, we assume that it is in the usual form, charging that the death of Edward W. Ashling was caused by the negligence of appellant, and that the deceased was in the exercise of due care.

From the evidence, we learn that the deceased was what is known as a "hostler" in railroad parlance, i. e., that he received engines from the regular engineers, as they came from the road, and then took charge of them in the shops or round house, and had them cleaned and ready for departure on the road again when they were wanted, and that he also ran locomotives about the yard or assisted trains to pull over grades with an extra engine when that service was needed. It was in this latter kind of service that he was killed, on the 23d day of February, 1886. He was ordered by Heckman, the master mechanic of appellant, on that day, to take engine No. 11 out of the round house at Streator and push an outgoing train over Ransom Hill, a few miles east of Streator. He obeyed the order, and after assisting the train over the hill he

started to return to Streator, and on his way back the boiler of the locomotive exploded and killed him.

It was contended by the plaintiff below that the boiler was weak and cracked, and had been out of repair for some time; and that it was dangerous and unfit for use at the time the deceased was sent out with' it, and known to be so by appellant; and that it was an act of negligence on the part of appellant to allow it to be used by the deceased, and that deceased did not know of the weak or dangerous character of the boiler. On behalf of the defendant it is urged that the boiler was not weak, cracked, or out of repair, and that the explosion was not due to that cause, but on the contrary, was caused by the negligence of the deceased himself in allowing the water in the boiler to get too low.

A trial below resulted in a verdict for appellee for $5,000, and the court, after overruling a motion for a new trial, gave judgment on the verdict. Proper exceptions to the ruling of the court were taken and now appellants bring the case here upon appeal.

Inasmuch as this judgment must be reversed and the cause remanded for another trial, we refrain from the expression of any opinion upon the weight or sufficiency of the evidence to support the verdict.

Mr. Heckman was the master mechanic of appellant in 1886, and Mr. Crocker at the same time was superintendent of all matters pertaining to the machinery, cars, tracks, bridges and buildings of the appellant's road, and they had their headquarters at Streator at the time of the accident. At the same time John T. Corbet was foreman of the C., B. & Q. boiler shops at Aurora. He had for several years been inspector of boilers and was interested in knowing the cause of explosions, as he says. He saw an account of this explosion on the 23d of February, and on the 27th day of February, four days later, he went to Streator to examine this boiler, in company with a Mr. McDaniels. When they arrived at Streator they went to appellant's yards and found what they supposed to be the wrecked locomotive, marked No. 11. While they were looking at it, Heckman and Crocker came

out to them and engaged them in conversation concerning the boiler. The record discloses the following examination of Corbet, who was then on the witness stand testifying for appellant. These questions were asked by counsel for appellee on cross-examination:

Q. What did they or either of them say about that locomotive being the one or not the one that exploded with Mr. Ashling?

Objection by defendant; overruled, and exception.

A. I asked Mr. Heckman if this was the engine that killed Mr. Ashling. He said it was. Mr. Crocker also said it was: then we examined the engine carefully and I pointed out to them the weak places in the engine.

Motion to exclude by appellant; overruled, and exception.

Q. What did you say or do to Mr. Heckman and Mr. Crocker with regard to the locomotive? If anything, state fully.

Objection by defendant; overruled, and exception.

A. I showed them the weak places in the boiler.

Q. What did you show them? explain to the jury.

A. I showed them where the sheet was cracked, two-thirds of the way through.

Q. What sheet?

A. The wagon top.  *  *  *

Q. Did you call Mr. Crocker's or Mr. Heckman's attention to that crack at that time?

Objection by defendant; overruled, and exception.

A. I did, sir.

Q. What did they say about it, if anything?

Objection by defendant; overruled, and exception:

A. They both of them said it was a weak place; surely a weak place.

Motion by defendant to exclude answer; motion overruled, and exception.

When Mr. McDaniels was called as a witness for appellee, he was permitted, over the objections of appellant, to testify as to what the witness Corbet said to him and the others, on the occasion when the locomotive was being examined, referred

to by Corbet, and to give to the jury what Corbet said and did in pointing out the weak places in the boiler.

The admission of this testimony so far as it relates to the declarations of Crocker and Heckman as to the condition of the boiler or locomotive was clearly and manifestly erroneous. The declarations of an agent or servant of the principal, made in the discharge and line of his duty and in the immediate connection of the doing of some act in the line of his duty, and which relate to what he is doing, so as to become a part of the act or *res gestæ* itself, is always competent evidence to be used against the principal when the act done becomes the subject of judicial inquiry. This is allowed because the act and the declarations made in connection with it form one indivisible transaction. Mix v. Osby, 62 Ill. 193.

On the contrary, the declarations of agents and servants are not admissible against the principal or master, when they do not form a part of the transaction involved so as to become a part of it, or be a part of the *res gestæ*. This rule of law seems to be so well settled and so universal in its application that a citation of authorities in its support would be wholly unnecessary and we shall refer to but three cases: M. C. R. R. Co. v. Granger, 55 Ill. 503; C., B. & Q. R. R. Co. v. Lee, 60 Ill. 501; C., B. & Q. R. R. Co. v. Riddle, 60 Ill. 534.

Indeed, we do not understand appellant as denying that this is the law, but it insists that Crocker and Heckman were not the agents or servants of the company, but being chief officers, their declarations might bind the company whenever or wherever made.

There can be no claim that Heckman was a chief officer. As to Crocker, he swears that " in 1886 he was in the service of appellant and had general supervision of all matters pertaining to the machinery, cars, tracks, bridges and buildings of the appellant, and had the appointment of master mechanic or foreman of the machine shops." This answer would indicate that he had charge of the particular matters mentioned in his answer; but we do not understand that this employment would make him what the law recognizes as one of the general

officers of the corporation, such as president, or general superintendent or manager, standing in the very stead and place of the corporation, and speaking and acting for it, and binding it by his declaration from very necessity.

There is a wide difference between a president or a general superintendent of a corporation, having general control or power over all its affairs, and a mere master or chief of some particular department. There are many subordinate departments or divisions in the operation of railroads with individual chiefs or heads of these departments, but they are all responsible to the general head or chief officer. But even in the case where the declarations of a president may bind a corporation they must be so intimately connected with the discharge of some duty required by him by virtue of his office that such declarations are a part of the *res gestæ*. The conversation must be a part of, or relate to, some act which he is doing in the line of his duty as such officer. Otherwise his declarations can not bind the company. And in the C., B. & Q. R. R. Co. v. Coleman, 18 Ill. 297, the very case relied on by appellant, this distinction is clearly recognized and pointed out. In that case the declarations made by the president of the company related to a business transaction which he, as such president, had in hand and was trying to adjust, and when he not only had the right, but it was his duty to act and speak for this company. We think this distinction will be found to run through all the cases, viz.: That none but general officers can bind corporations by their declarations and admissions, and that even then such declarations must be made while they are engaged in the line of their duty, doing some act required or permitted of them by their office, in the transaction of some business. While it may be true that the same strictness as to the time, place and circumstances, which would be required in order to make the admission of a mere agent or servant admissible, would not apply to a general officer of a corporation, still it must, at all events, appear that the general officer, in order to bind the corporation or his principal by his declarations or admissions, is speaking in connection with some official act required or permitted to be done by him by virtue of his

office, although completion of the business in hand may require
a greater or less length of time, and may properly relate to
and cover transactions on different dates.

Tested by this rule it would not alter the result if it should
be conceded that both Crocker and Heckman were general
officers. Here is a conversation had with Corbet and Mc-
Daniels, strangers to all parties, four days after the accident,
when the admissions are claimed to have been made, in no
manner whatever connected with it in point of time or place.
The admissions and conversations did not relate to any attempt
to settle the claim of appellant and were not with any one
authorized to settle for her. The admissions were not con-
nected with the doing of any act required of either Crocker
or Heckman, so far as the testimony discloses. The evidence
was, therefore, hearsay, pure and simple. Both Crocker and
Heckman were present and could have been called to testify
to what they saw in relation to the condition of the boiler on
that occasion. Their admissions were introduced as original
testimony for the plaintiff and not by way of impeachment
after a proper foundation had been laid, and after they had
denied making use of the declarations attributed to them.

It is also insisted the court erred in giving appellee's first
instruction:

1. If the jury believe from the evidence that the deceased,
Edward H. Ashling, the plaintiff's intestate, in February, 1886,
was killed by the explosion of a boiler on a locomotive of the
defendant while running such locomotive in the employ of
the defendant as an engineer, and that such death was caused
by the said boiler being out of repair and defective through
the carelessness of the defendant, so that it was unsafe and
caused such explosion, and that the deceased at the time was
using ordinary care in the running and use of such locomo-
tive and boiler, then the plaintiff would be entitled to recover
damages for such death to an amount not exceeding $5,000,
and in such case, the jury should find for the plaintiff. (*Given.*)

Only two other instructions were asked or given on behalf
of the appellee, one defining what ordinary care was, and the
other defining or relating to what is meant by a preponder-

ance of the evidence. While there were thirty instructions asked and given for appellant (a most unreasonable number), there were none of them that recognized the right of appellee to recover any damages or that sought to lay down any limitations on the right of appellee to recover any amount in case the jury found for her. So that there was nothing in all the instructions to restrain the jury either as to the basis or grounds of recovery, or its amount, except the statement in the first instruction for plaintiff, that she might recover, if at all, the full amount of $5,000. The statute giving this cause of action to the widow and next of kin, expressly limits the right and extent of recovery to the pecuniary loss sustained in the death of the husband, to an amount not exceeding the sum of $5,000. The jury were not informed in this instruction that any such limitation as that imposed by the statute limiting appellee's right of recovery to the extent only of her pecuniary loss, had any existence, or that they could not go beyond that sum.

The instruction was bad in another respect. It did not even restrict the jury in the assessment of damages, to what was shown by the evidence. It simply gave the jury an unbridled license to give the plaintiff whatever they pleased if she was entitled to recovery at all; and the only restriction placed upon them was that they could not exceed $5,000. In these respects this instruction was bad. City of Freeport v. Isbell, 83 Ill. 140; Martin v. Johnson, 89 Ill. 537; C., B. & Q. R. R. Co. v. Sykes, 96 Ill. 162; Rolling Mill Co. v. Morrison, 111 Ill. 646; James v. Johnson, 12 Ill. App. 286; McGinnis v. Berven, 16 Ill. App. 357; East St. L. & C. Ry. Co. v. Frazier, 19 Ill. App. 92. The instruction is also defective in not submitting to the jury the question of the knowledge of the deceased, or his want of knowledge, of the alleged dangerous condition of the boiler.

It may be and has been urged that the rule insisted upon and held to be the law in the above cases is unreasonably strict, and that both the Supreme and Appellate Courts have adhered to refinements not always supported by any substantial reason. However just or unjust these complaints may be in fact it is

immaterial for us to inquire. It is enough for us to know that the Supreme Court has repeatedly laid down the rule that great strictness and technical accuracy shall be observed in instructions relating to the measure of damages in actions to recover damages for personal injuries. It is our duty to follow the law in this as in all other respects, as declared by the Supreme Court. The only safe rule is for parties to recognize the requirements of the law in the preparation of their instructions and to use a little more care in that respect. If instructions were prepared after careful examination of the decisions instead of in the face of the jury and excitement and hurry of the trial, it would save many reversals for errors in law which may not affect the real merits of the case, but which courts can not disregard.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*