**Lewis Hoke, Appellee, v. Harrisburg Hospital, Inc., Appellant.**

Opinion filed June 8, 1935. Rehearing denied September 5, 1935.

MILEY & COMBE, of Harrisburg, for appellant; D. C. WRAY, of Wheaton, of counsel.

CHARLES DURFEE, of Golconda, and D. L. DUTY, of Marion, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Lewis Hoke, appellee, herein referred to as plaintiff, instituted an action in the circuit court of Saline county against Harrisburg Hospital, Inc., herein referred to as defendant, to recover damages alleged to have been sustained by reason of certain X-ray burns.

The case was tried upon two counts. The first alleged that on August 28, 1928, the defendant was the owner of and in control of a general hospital operated for profit, that in the hospital the defendant maintained and operated an X-ray machine for the treatment of patients, that the plaintiff applied to the defendant for treatment and while in the exercise of due care for his own safety, the defendant by its officers, agents, servants and employees undertook and did treat him in said building with its apparatus and that the defendant in administering the treatment wholly failed to exercise reasonable care for his safety and as a result he was burned. The second count was the same as the first, except that it alleged that he applied for treatment for which he paid and that the defendant failed to use ordinary care, skill, caution and vigilance for the safety of the plaintiff. Defendant filed a general issue plea, and two special pleas, denying that it was the owner of or in control of the operation of the X-ray; that the plaintiff did not apply to the defendant for treatment but was the patient of Dr. R. B. Nyberg. The second special plea was that the X-ray machine and its appliances were in good repair, of an approved kind and that it was operated by Dr. R. B. Nyberg, a competent specialist in that line.

At the conclusion of plaintiff's evidence and at the close of all the evidence, defendant moved for a directed verdict, which was overruled. The jury returned a verdict for $4,000 and after overruling defendant's motion for judgment *non obstante veredicto* and in arrest of judgment, judgment was entered on the verdict.

The court's action in overruling defendant's motion for a directed verdict is assigned as error.

The defendant was incorporated in 1922. The stock is owned by more than 200 persons, residents of Harrisburg. The board of directors consists of seven persons, four of whom are doctors. Dr. Butner, who is president, and Dr. Nyberg are directors.

The defendant owns a building, the first floor of which it rents to doctors for their private offices, Drs. Butner and Nyberg each having their offices on that floor. The floors above the first are devoted to rooms for patients and general hospital purposes. The evidence is that the only interest the defendant has in the floor occupied by the doctors is the collection of rentals from the doctors and that it does not receive any part of the income collected by the doctors from their private practice. The doctors send their patients to the hospital for treatment and the hospital fees belong to the defendant.

The X-ray machine upon which plaintiff sustained injuries is owned by Dr. Nyberg. It is kept in a room in that part of the building used for hospital purposes. Dr. Nyberg and an assistant who is employed by him in his private office on the first floor are the only persons to operate the machine. The defendant furnishes the room and electric current rent free, except that the earnings from the machine are divided between the hospital and Dr. Nyberg. The earnings were sometimes collected by Dr. Nyberg and other times by the defendant but in either event, a division was made. Repairs to the machine were paid for by Dr. Nyberg.

Prior to the accident in question, plaintiff had suffered injuries while employed by a contracting firm. He had a claim pending before the industrial commission. In preparation for a hearing before the commission, his attorney suggested that he have some. X-ray pictures taken and secure a doctor to testify in refer-

ence to them. Plaintiff went to the office rooms occupied by Dr. Nyberg on the first floor of the building and engaged him to take the pictures and to appear before the commission. There was difficulty in getting a suitable picture and several exposures were made, resulting in severe burns to the exposed parts of his body. Each of the pictures was made by Dr. Nyberg and his assistant in the X-ray room above described. Plaintiff was never registered in the hospital and the evidence does not show that any of the hospital employees had anything to do with the taking of the picture.

Plaintiff seeks to recover on the basis that the defendant committed the negligent act. Being a corporation, it can only act through its agents and employees. Therefore, the question presented by the pleadings and the motion is, Was Dr. Nyberg, in the taking of the X-ray pictures, acting for and on behalf of the defendant?

The fact that Dr. Nyberg was a stockholder in the defendant corporation would not render the corporation liable for his negligent acts, nor does the fact that the defendant company which was largely under the control and management of the four doctors, who constituted a majority of the board of directors, one of them being Dr. Nyberg, render the corporation liable for the negligence of Dr. Nyberg. *Johnson v. City Hospital Co.,* 196 N. C. 610, 146 S. E. 573; *Black v. Fischer,* 30 Ga. App. 109, 117 S. E. 103; *Stacy v. Williams,* 253 Ky. 353, 69 S. W. (2d) 697. The division of the earnings from the X-ray, given in lieu of rentals for the room and the electric current, did not tend to establish a relationship of master and servant.

Plaintiff's employment of Dr. Nyberg was two-fold, viz., to have the X-ray pictures taken and to secure his services as an expert witness to aid in the introduction of the pictures in evidence in a legal proceeding.

There is no evidence that tends to prove that the defendant was usually engaged in rendering such services and is no evidence to prove that the defendant exercised any right of control over Dr. Nyberg in his acceptance of plaintiff's employment or in the performance of the services he was to render. "The right to control the negligent servant is the test by which it is to be determined whether the relation of master and servant exists. *Pioneer Fireproof Const. Co. v. Hansen,* 176 Ill. 100. Or, as stated in *Maredosia Levee & Drainage Dist. v. Industrial Commission,* 285 Ill. 68, and *Decatur Railway & Light Co. v. Industrial Board,* 276 Ill. 472: 'The principal test as to whether one is an employee or an independent contractor lies in the degree of control retained and exercised by the person for whom the work is being done.'" *Donohue v. George W. Stiles Construction Co.,* 214 Ill. App. 82, 87.

Even though Dr. Nyberg had been employed by the defendant as an X-ray specialist to operate the machine and to give X-ray treatments to the patients in the hospital, that would not in itself establish the relationship of master and servant so as to make the hospital liable for his negligent acts. The general rule is that such X-ray specialist is regarded as in the same professional class as a doctor and proceeds upon his own judgment as to how and what should be done. *Runyan v. Goodrum,* 147 Ark. 481, 228 S. W. 397, 13 A. L. R. 1403; *Schloendorff v. Society of New York Hospital,* 211 N. Y. 125, 105 N. E. 92; *Glavin v. Rhode Island Hospital,* 12 R. I. 411, 34 Am. Rep. 675.

It is contended by plaintiff that the verbal admissions made on different occasions by Dr. Butner, who was president of the corporation, are sufficient to sustain the court's order in overruling defendant's motion for a directed verdict.

There is no evidence tending to prove that the board of directors of the defendant had notice of plaintiff's

injuries or that it took any action employing an attorney to represent it in trying to effect a settlement of the claim or that it authorized its president to take such action or that the president was in any way authorized to act in the matter. There is evidence which tends to prove that Dr. Butner made a statement to the effect that if plaintiff started suit, he should sue the hospital and not Dr. Nyberg; that on another occasion, he told a lawyer to see plaintiff's attorney and tell them if they would sue the hospital that he and Dr. Nyberg would testify that the X-ray belonged to the hospital. These statements are denied but in this discussion, our only question is whether there is any evidence which tends to prove plaintiff's case and we take them as true.

Admissions by a president of a corporation made in the execution of the duties imposed upon him and concerning a matter upon which he is called upon to act and which matter is within scope of the authority usually exercised by him are evidence against the corporation, *Chicago, B. & Q. R. Co. v. Coleman,* 18 Ill. 297; *Scovill Mfg. Co. v. Cassidy,* 275 Ill. 462, but such admissions or declarations must be so intimately connected with the discharge of some duty required of him by virtue of his office that such declarations are a part of the *res gestae.* The admission must be a part of or relate to some act which he is doing in the performance of the duties as such officer. *Chicago & St. L. R. Co. v. Ashling,* 34 Ill. App. 99; *O'Neill v. Lindsay Light Co.,* 181 Ill. App. 700. The declaration of Dr. Butner admitting the liability of the hospital does not appear to have been made at a time when he was performing the duties of his office and on a matter within the scope of his usual duties as such officer.

"The president of a corporation has no implied authority, merely by virtue of his office, to surrender rights of the corporation; nor can he do so, even when

he has the management and general control of the corporation, except for a consideration and in the usual course of business." Fletcher Cyclopedia Corporations, Vol. 2, page 536.

We are of the opinion that there is no evidence tending to show that Dr. Nyberg in the taking of the X-ray pictures was the agent of the defendant and that the admission of Dr. Butner was not made under circumstances as to be binding upon the defendant and that the court erred in not directing a verdict for the defendant.

Other errors have been urged but the view we take on the matter considered makes it unnecessary to consider other alleged errors.

For the reasons assigned, the judgment of the lower court is reversed.

*Judgment reversed.*