McNEILL v. DURHAM AND CHARLOTTE RAILROAD COMPANY.

(Filed May 6, 1902.)

1. NEGLIGENCE —*Personal    Injuries —Passengers —Derailment —
      Carriers.*

>    Where, in an action by a passenger for injuries caused by the
      derailment of a train, the defendant admits the derailment
      and its counsel admits such derailment to be a *prima facie*
      case of negligence, the burden is on the defendant to show
      that the derailment was not caused by the negligence of the
      defendant, and the allegations of the complaint as to the
      manner and cause of the accident become immaterial.

2. INSTRUCTIONS—*Evidence.*

>    In an action by a passenger for injuries caused by the derail-
      ment of the train, an instruction that defendant was liable,
      if the accident occurred by reason of an insufficient crew,
      there being no evidence tending to show that the derailment
      occurred from a want of a sufficient train crew, is harmless
      error.

3. EVIDENCE—*Personal Injuries—Negligence.*

>    In an action by a passenger for injuries caused by the derail-
      ment of a train, it is error to admit testimony that wrecks
      had occurred on trains in charge of the engineer having
      charge of the train in question.

   Clark and Douglas, J.J., dissenting.

Action by W. H. McNeill against the Durham and Char-
lotte Railroad Company, heard by Judge *Thos. A. McNeill*
and a jury, at January Term, 1902, of the Superior Court
of Moore County.    From a judgment for the plaintiff, the
defendant appealed.

   *Black & Adams, Douglass & Simms,* and *U. L. Spence,* for
the plaintiff.
   *Guthrie & Guthrie, Murchison & Johnson,* and *Seawell &
Burns,* for the defendant.

Montgomery, J.    There were two issues submittted to the

McNeill *v.* Railroad.

jury in this case: "1. Was the plaintiff injured by the negligence of the defendant, as described in the complaint? 2. What damage, if any, is the plaintiff entitled to recover?"

The plaintiff, in the complaint, alleged that his injuries were caused by the derailment of the coach in which he was seated; and the causes of the derailment were specifically set out in the following language: "That the derailment of said car and the injury of the plaintiff were caused by the careless, negligent and rapid running of said train, the defendant's negligent construction of said road and negligent failure to keep the same in proper and safe repair, and the defendant'snegligent failure to provide for said train a sufficient crew, and its negligent failure to provide and use such airbrakes and other machinery and appliances as were necessary to the safe and proper operation of said road."

The defendant, in its answer, admitted the plaintiff's injuries, but not to the extent claimed, and also admitted that they were caused by the derailment of the car. For a defense against the allegation of negligence, the defendant averred in its answer that the occurrence was an accident, and that it was due to other causes than either or all of those set out in the complaint.

On the trial, the defendant introduced evidence tending to show that in the train was a box-car belonging to the Chesapeake and Ohio Railroad Co., which was just in front of the derailed car, and that the C. and O. car had a defective bolster connected with its rear truck; that the defect consisted in a fracture of long standing, and so situated that it could not be discovered by ordinary inspection, nor without taking the truck from under the car to which it was attached; and that the breaking of said bolster under the C. and O. car was the cause of the derailment of the aforesaid truck under the box-car next behind the C. and O. box-car.

On the trial, the defendant's chief purpose was to hold the

plaintiff to the specific allegations in his complaint as to the causes of the derailment upon the trial of the issue, and the principal and chief prayers for special instructions were directed to hold the plaintiff to proof of the allegation as described in his complaint. The defendant, through its counsel, insist that that contention involves a very old and familiar question of pleading as well as evidence; that is, that a plaintiff is held to the proof of the material allegations in his complaint. But is either one of these specifications of the causes of the derailment, as set out in the complaint, material to the proper determination of the first issue in this case? The derailment, as we have seen, was admitted by the defendant, and its counsel further admitted that that constituted a *prima facie* case of negligence and put the burden of proof on the defendant to show that the derailment of the car was not caused by defendant's negligence. That admission was the law of the case, and what difference does it make by what means or in what manner the car was derailed, unless the defendant is able to show that the derailment was not caused by a negligent act of the defendant—any negligent act of the defendant. The defendant, as we have seen, undertook to show that the occurrence was an accident, and that it was caused by a hidden defect of a foreign car, which could not be detected by the ordinary and usual inspection. The derailment having been admitted, then, and the *prima facie* negligence of the defendant established, the specifications in the complaint as to the manner of the derailment became immaterial. The matters set up by the defendant as to how the derailment occurred, and according to the proof introduced, were submitted to the jury in a full and fair aspect. This case involves a number of important legal questions, and in the main his Honor's instructions to the jury were correct. One immaterial error probably ought to be noted. The Court instructed the jury: "If the jury shall find from the evidence that on the 6th of April, 1900, the defendant re-

ceived the plaintiiff as a passenger on its passenger train to convey him as such from Hallison to Gulf, and if the jury shall further find from the evidence that the defendant failed to provide said train with such number of competent employees as was necessary for the safety of the passengers thereon, and that in consequence thereof said train was derailed and thrown from the track, and that the plaintiff was injured thereby, the jury should answer the first issue 'Yes.' " We find no evidence in the record tending to show that the derailment occurred from a want of sufficient train crew to manage and operate the train. That instruction constituted the fifteenth exception of the defendant, and was well taken. It was, however, not material error, for the reasons already stated in this opinion.

There is, however, one error in the ruling of his Honor on a question of evidence so substantial and serious that a new trial will have to be granted on account of it. The witness Jones, superintendent of defendant's road, testified for the defendant that the general character of the engineer, who had charge of the defendant's engine at the time when the plaintiff was injured, was good, and that he was a competent locomotive engineer. On cross-examination the witness was asked (the case states as affecting the competency of the engineer) : "How many wrecks have occurred on the defendant's road when Marshburn (the same in charge of engine at time of accident) was acting as engineer ?" The Court admitted it as affecting the competency of Marshburn as an engineer, and the jury was instructed to consider it in no other light. The witness answered that there were three— one of them the Tyson Creek wreck. The plaintiff's counsel then asked the witness to state the character of that wreck and the number of people killed in it, if any, with a view, so the case states, of showing that Marshburn was reckless and incompetent as a locomotive engineer. It was admitted over

the objection and exception of the defendant, the Court instructing the jury to consider it only as bearing upon the competency of Marshburn as an engineer. The witness answered, "There were three persons killed or drowned in the Tyson Creek wreck, when said Marshburn was engineer on the wrecked train." The answer was objected to, and an exception filed to its being allowed. The witness, on redirect examination, testified that the Tyson Creek wreck was caused by an unusual freshet in the creek, which washed out the foundation of the benches which supported the trestle over said creek, and on account of the high water the engineer could not have discovered it until the locomotive got on the trestle and went down. It was not the fault of the engineer Marshburn that the Tyson Creek wreck occurred. After all this evidence was in, what light did it shed on the engineer's competency or incompetency? It was admitted for no other purpose, and it had no bearing on the matter of the skill of the engineer or his fitness in any respect for his position. It might have been competent after the defendant had undertaken to prove the engineer's competency, to show by evidence, if such evidence existed, that the engineer, through his carelessness or incapacity, caused other wrecks, but the evidence should have been confined to those wrecks caused by the engineer's fault. As it was after the evidence was in, the jury had before them the fact that three wrecks had occurred in which the engineer was in charge of the engine, and in one of which there had been loss of life, the whole of it, and especially that part of it concerning the Tyson Creek wreck and its attendant circumstances, was damaging to the defendant, and prejudicial. It probably had considerable weight upon the question of defendant's alleged negligence, and if that was clear beyond question from the other undisputed facts in the case, it may have had weight on the question of the amount of damages. And although it is true that the Court instructed

the jury that they should not award exemplary damages, yet we know how difficult a matter it was for the jury to draw the line between exemplary or punitive damages and damages purely compensatory, when there was evidence allowed, over the objection of defendant, calculated to arouse a feeling of resentment or prejudice against the defendant and to divert their minds from the true issue.

New Trial.

CLARK and DOUGLAS, JJ., dissent.