THE COMMUNITY PARTNERSHIP composed of HÉCTOR HUYKE COLÓN and his wife, ALICE MIRIAM SOUFFRONT, Plaintiffs and Appellees, *v.* PRESBYTERIAN HOSPITAL OF THE CITY OF SAN JUAN, INSURANCE COMPANY OF NORTH AMERICA ET AL., Defendants and the first two Appellants.

No. 277.     Decided May 16, 1963.

*Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco, Hernán G. Pesquera,* and *Vincente Santori Coll* for appellants. *Carlos N. Souffront* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

This is a claim against a hospital where plaintiff underwent surgery. The application of the doctrine of *res ipsa loquitur* and the reasonableness of the sums awarded are involved. Let us examine the facts.

As a result of the medical examination performed on Alice Miriam Souffront by Dr. Roberto Jiménez López, the latter found that she was suffering from a nodule or tumor in the thyroid of a dangerous nature because of the probability that it could be a malignant tumor. Mrs. Souffront was informed of this finding as well as of the need of undergoing surgery for the purpose of extirpating the tumor. To that effect she was confined in the Presbyterian Hospital on March 19, 1958, upon advice of the physician who at that time held the office of medical director of that hospital. The operation was scheduled for the following day and Dr. Jiménez would act as her private physician.

At that time the construction engineering firm Rodríguez del Valle, Inc. was performing some work under a contract

with the hospital, repairing the floor above the operating room.

In the afternoon of her confinement in the hospital Mrs. Souffront was given drugs and medicines in preparation for the operation. The following morning she was carried to the operating room where she was administered general anesthesia requiring the introduction of an endotracheal tube in order to pass the anesthesia directly to the lungs, and also curare injections and pentothal sodium. After she was completely anesthetized and Dr. Jiménez was ready to perform the operation, the anesthesiologist informed him that some dust was falling in an adjacent operating room and that from 12 to 20 grains had fallen into a blood vial which he showed him. Thereupon Dr. Jiménez López shook the towel which covered the instruments and also noticed the falling dust. Since he did not know whether the dust from the towel was sterilized and there was a possibility that it was not if it was falling from the work performed in the hospital building, he figured that it was a risk to the patient to perform the operation at that time and called it off. Both parties are agreed that the physician acted wisely in so deciding under the circumstances. Subsequently the construction works were also suspended.

As a result of the intratracheal anesthesia Mrs. Souffront developed cyanosis and hypotension accompanied by high temperature, chills and vomit. The cyanosis disappeared about two hours later, but the high temperature persisted until the following day. These symptoms were due to the anesthesia and to the manipulation of the trachea and the throat for the purpose of administering the same, and apparently it injured some region which became swollen because of the cold from which the patient was suffering.

When she learned that the operation had been called off, she thought that it had not been performed because they had found something malignant. As a result she became very

nervous and worried. Although Dr. Jiménez López informed her the following day of the reasons for calling off the operation, she still worried about having to undergo again the same suffering. She also worried about the welfare and care of her children whom she would have to leave again in care of the servants.

She was discharged on March 22, 1958 and went back to the hospital on the 28th, when she was successfully operated on by Dr. Jiménez López.

The trial having commenced on the merits, codefendants Rodríguez y Del Valle, Inc. were dropped from the suit after agreeing with the Presbyterian Hospital that if there was any negligence in connection with the construction works, since such works were being carried out in accordance with a plan devised by the hospital, the hospital and not the contractors would be liable.

Dr. Jiménez López was also dropped because the parties were of the opinion that he had taken the only action advisable, namely, the postponement of the operation in order to protect the patient.

In other words, that plaintiffs desisted from their complaint as to all defendants with the exception of the Presbyterian Hospital and its insurer, codefendant Insurance Company of North America.

The Superior Court applied the doctrine of *res ipsa loquitur* in order to hold the Presbyterian Hospital liable. The trial court made the following conclusions of law:

1. The allegation of specific acts of negligence does not prevent the application of the doctrine of *res ipsa loquitur*. *Román* v. *Mueblería Central*, 72 P.R.R. 320, 322, 324 (1951); *Rodríguez* v. *White Star Bus Line*, 54 P.R.R. 294, 297, 298 (1939).

2. That said doctrine is predicated on a rule of probabilities, the two essential requirements of which are that the

facts and circumstances of the case point out with greatest probability (1) that someone was negligent, and (2) that defendant is liable therefor, *Kirchberger* v. *Gover,* 76 P.R.R. 851, 855, 856 (1954); *Cintrón* v. *A. Roig, Sucrs.,* 74 P.R.R. 957, 964, 965 (1953); *Zentz* v. *Coca Cola Bottling Co.,* 247 P.2d 344, 346–50 (Cal. 1952).

3. That it is very unlikely that dust such as that found in the blood vial may accumulate in an operating room without someone being negligent.

4. That the presence of dust in the operating room— whether or not it was due to the two probable causes appearing from the evidence—was caused by the negligence of some employee or agent of defendant. The evidence does not disclose the specific relationship existing between plaintiff and the physician and the persons who were working with him in the room. See, however, *Ybarra* v. *Spangard,* 154 P.2d 687, 691 (Cal. 1945).

5. Defendant having failed to show that the falling dust was not due to negligence of one of its employees or agents, the inference which the doctrine of *res ipsa loquitur* entails should prevail against it.

In its judgment the court awarded to plaintiffs Héctor Huyke Colón and Alice Miriam Souffront the sum of $5,800 for damages, plus $400 for attorney's fees.

Appellants make the following assignment of errors:

"FIRST: In rendering judgment for plaintiff without any supporting evidence, invoking the so-called doctrine of *res ipsa loquitur*—inapplicable to the facts and circumstances of this case—in order to impose liability on Presbyterian Hospital of the City of San Juan, appellant herein, on the basis of remote possibilities and mere speculations and conjectures.

"SECOND: In awarding to plaintiffs compensation in the sum of $5,800, which is excessive and disproportionate to the nature and insubstantiality of the damages allegedly sustained by plaintiff."

386

I

■■ According to our case law, three requirements are necessary in order that the doctrine of *res ipsa loquitur* may apply: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of defendant; (3) it must not be due to any voluntary action on the part of plaintiff. *Hermida* v. *Feliciano*, 62 P.R.R. 54, 56, 57 (1943); *Cintrón* v. *A. Roig, Sucrs.*, 74 P.R.R. 957, 964 (1953); Prosser, Torts 201 (2d ed. 1955); Wigmore, Evidence 498, § 2509 (2d ed.); 2 Harper & James, The Law of Torts 1081 (1956), add a fourth condition, to wit: that knowledge of the causes of the damage be more accessible to defendant than to plaintiff. In *McDonnell* v. *Montgomery Ward & Company*, 154 A.2d 469, 473 (Vt. 1959), it is said that in order that the doctrine be applicable to a particular instrumentality, it is essential that defendant should have been under a legal duty to plaintiff to exercise a certain degree of care in order to prevent the occurrence of the damage, 65 C.J.S. 1004, § 220 (7).

■ The trial court determined that since it was very unlikely that dust such as that found in the blood vial would accumulate without someone being negligent, the first requirement is deemed to have been met. We believe that the court acted correctly in making such a determination. A public or private hospital owes to its patients the reasonable care and attention required by the circumstances. A patient is generally admitted to a hospital under an implied obligation that he shall receive such reasonable care and attention for his safety as his mental and physical conditions may require. *Wetzel* v. *Omaha Maternity & General Hospital Ass'n*, 96 Neb. 636, 148 N.W. 582 (1914); *Skidmore* v. *Oklahoma Hospital*, 278 Pac. 335 (1929); *Gardner* v. *Newman Hospital*, 198 S.E. 122 (Ga. 1938). "The decisive factors in each case

are the specific conditions and conduct of the patient, his capacity to care for himself, the hospital's actual information as to those conditions and that conduct and capacity and the one it should obtain if it properly uses the skill and experience of its professional employees to verify them, and the dangers afforded by the surroundings." *Hernández* v. *The Capital*, 81 P.R.R. 998, 1005 (Serrano Geyls) (1960).

In *Tulsa Hospital Ass'n* v. *Juby*, 175 Pac. 519, 523 (1918), the patient developed pneumonia as a result of the humidity from rain which leaked through the roof and fell directly on her bed. The court stated as follows:

"It was incumbent on the defendant to exercise ordinary care in furnishing the plaintiff a suitable and safe place and . . . to use ordinary care in looking after and caring for the plaintiff while she was in its care and custody."

■ The degree of care required of a hospital is that which a reasonable and prudent person would exercise under similar circumstances. 41 C.J.S. 350; *Rice* v. *Cal. Lutheran Hospital*, 163 P.2d 860, 862, 864 (Cal. 1945); *Lexington Hospital* v. *White*, 245 S.W.2d 927, 929 (Ky. 1952); *Fetzer* v. *Aberden Clinic*, 204 N.W. 364 (1925); *Gray* v. *Carter*, 224 P.2d 28 (1950); *Hogan* v. *Clarksburg Hospital Co.*, 63 W. Va. 84, 59 S.E. 943 (1907), 124 A.L.R. 189; *Hernández* v. *The Capital*, *supra*. However, a hospital is not an insurer against all imaginable damages other than those which a reasonable and prudent person may anticipate. *Rice* v. *Lutheran Hospital*, *supra*; Harbison, *The Standard of Care Owed by a Hospital to its Patients*, 2 Vand. L. Rev. 660 (1949).

■■ After Mrs. Souffront paid the admission fee and was admitted as a patient of the Presbyterian Hospital, she certainly had the right to assume that she would be given reasonable protection for her health and personal safety and that proper security measures would be provided for the purpose of admitting her in the hospital. She therefore had the right to assume that the operation which she had to undergo

would be performed normally and in the usual manner, as operations of that nature are usually performed in other hospitals. Therefore, where the presence of unidentified dust in a blood vial which falls from an adjacent room on towels and sheets and in the whole interior of the room where she was to undergo surgery is the reason for calling off an operation, such circumstance gives rise to an inference that such event would not have occurred except through someone's negligence.

In determining whether the accident is of such a nature as to infer that it was probably due to someone's negligence, the courts have relied on two considerations: (a) common knowledge; (b) the testimony of expert witnesses as well as the circumstances relating to the accident in each particular case. *Wolfsmith* v. *Marsh*, 337 P.2d 70, 72 (Cal. 1959). See, also, other cases cited in that opinion; *Zentz* v. *Coca Cola Bottling*, 39 Cal.2d 436, 446, 247 P.2d 344 (1952); *Bauer* v. *Otis*, 133 Cal. App.2d 439, 284 P.2d 133, 136 (Cal. 1955). It is common knowledge that in the usual and ordinary course of things an accident such as that herein would not have occurred if the persons called upon to look after a patient in their custody would have exercised the degree of reasonable care. It is so stated by this Court in *Hermida* v. *Feliciano, supra* at 57, citing Prosser:

". . . there are occurrences which in themselves bespeak negligence. . . . When a gasoline filling station mysteriously explodes, many possible explanations suggest themselves, but the most likely one is negligence on the part of those in charge. All that is required is that reasonable men shall be able to say that on the whole it is more likely that there was negligence associated with the cause than that there was not."

■ For cases in which this first requirement of the doctrine has been met, see 2 Harper & James at 1082. It has been said that the requirement is only another way of stating a principle of circumstantial evidence, that the accident must

be such that in the light of ordinary experience it gives rise to an inference that someone has been negligent. Where there is no basis of common knowledge for such a conclusion, expert testimony may be a sufficient foundation for it. Prosser at 202 (2d ed. 1955).

From 38 Am. Jur. 992, § 296, we copy the following:

"The res ipsa loquitur rule arises from the inherent nature and character of the act causing the injury and from probability reasonably to be inferred from the character of the accident itself. It is founded in common knowledge and experience based on the generic circumstances peculiar to the class of physical causes which produced the casualty in question. Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. *What has happened in the past, under the same conditions, will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown.* The phrase is used to give expression to the idea that when an accident is shown to be of such a character as in the light of ordinary experience is inexplicable except as the result of negligence, then negligence will be presumed or inferred. The doctrine does not rest upon established facts. It does not apply where there is direct evidence as to the precise cause of the injury and all the facts and circumstances attending upon the occurrence appear." (Italics ours.)

■ In view of the surrounding circumstances which gave rise to the postponement of the operation, the hospital's duty to protect the patient, her condition at the time of the occurrence of the accident, and the common knowledge as to the normal course of operations performed in hospital rooms, we are bound to conclude that an inference that the accident would not have occurred if the persons bound to exercise due care had done their duty is correct. There is no question that it is more probable to think that there was negligence within a rule of reasonableness than to affirm that there was not.

As already pointed out, it is incumbent on the hospital to see that its patients receive good care while they are confined therein. However, in order to apply the doctrine of *res ipsa loquitur* as basis of liability, it is necessary that the agency or instrumentality which caused the accident be at such time under the exclusive control thereof. The basis for the exclusive control requirement is that it must appear that the negligence of which the thing speaks is probably that of defendant and not of another. 2 Harper and James, The Law of Torts 1085. In other words, the purpose is to eliminate the possibility that the accident was caused by a third party.

From an examination of the evidence appearing from the stenographic record it appears clearly that the requirement of "exclusive control" has been met. This is supported by the following testimony of Arturo Plard, Director of the Presbyterian Hospital:

"Q. And who was responsible, who was responsible for the maintenance and the asepsis of the operating room, Dr. Jiménez, the Hospital, or who?

A. We have a supervisor for the asepsis of the room. . . .

Q. Is she the employee of the Hospital?

A. Yes, Miss Balasquide, she supervises the *entire* operating room.

Q. And that is the person to whom you, as director, have entrusted the maintenance of the room in good condition for performing the operations?

A. Yes, sir.

Hon. Judge:

Q. According to your testimony, the Hospital is responsible for the asepsis of the room, the Hospital through its employee, the supervisor. In other words, there is no physician or person extraneous to the Hospital who is responsible for the asepsis of the Hospital.

A. A physician, I can not hold any outside physician responsible for the asepsis.

Q. The contractors were not, Rodríguez y Del Valle, were not responsible for the asepsis of the room?

A. Inside the room, no, sir; they did not go inside the room."

The control which the hospital had, through its employees, of the operating rooms appears even more clearly from Miss Balasquide's testimony. It reads in part as follows:

"Q. Madam, as supervisor of the operating room, which are your duties and obligations?

A. Well, in the first place, we have the records of the room; to look after the asepsis, *that everything be complete,* and that the technique be carried out." (Italics ours.)

Since the hospital had exclusive control of the operating rooms, we must necessarily conclude that the second requirement for applying the doctrine of *res ipsa loquitur* was met. In 24 A.L.R.2d 647, § 4, it is said as follows:

". . . one of the essential factors required to be shown before the principle of res ipsa loquitur may be applied to a situation involving the fall of an object or substance from the ceiling of a place of public resort, is that the party sought to be held liable had control of the instrumentality which caused the injury at the time when the injury occurred. In applying the doctrine the majority of the courts discussing the question have indicated either expressly or by implication *that control of the premises involved is tantamount to control of the instrumentality causing the injury.*" (Italics ours.)

We believe that the same principle applies in our case. Therefore, the presence of the dust—the cause of which was not accounted for—being the only reason why the physician called off the operation, it must be said that ordinarily the accident does not occur except through the negligence of the hospital which has the control and supervision of the premises.

The third requirement necessary for the application of the doctrine does not call for discussion since the same was met. There is nothing in the evidence to show any voluntary action of plaintiff which may have given rise to the occurrence of the damage.

Appellants maintain that it having been established that it was more probable that the dust was talcum powder rather than dust from the work, the doctrine of *res ipsa loquitur* did not apply. They are not right. The trial court was of the opinion that the doctrine was applicable, since none of the parties accounted for the presence of the dust in the rooms. The court deemed that the controversy as to whether the dust came from the work or was talcum powder which the physician and his assistants used to put on their gloves in the operating room was irrelevant. In *Kirchberger* v. *Gover*, 76 P.R.R. 851, 856 (Ortiz) (1954), we said that the doctrine was not applicable and that there was no presumption of negligence when the facts show that there is some other probable cause of the accident from which it may be inferred that there was no negligence, or where the evidence is incompatible with the absence of negligence. As may be observed, the principle *supra* contemplates that against the inference of negligence—probable cause of the accident—there should appear another cause from which, because it is *probable*, it may be inferred that there was no negligence. The *possibility* of the occurrence of an act would not be sufficient evidence to consider controverted the inference to be drawn from the occurrence of certain facts under certain circumstances on the basis of the doctrine of *res ipsa loquitur*. Yet, the court, in the exercise of its power to weigh the evidence, concluded that the evidence presented failed to account for the presence of the dust in the rooms in order that the inference of negligence be deemed overcome.

The case of *Kirchberger* v. *Gover*, *supra* at 856, is wholly distinguishable from the present case. There plaintiff's automobile was struck while it was parked in front of his residence. The trial court found on the basis of such set of facts that an inference of negligence against defendant, based on the doctrine of *res ipsa loquitur*, was warranted. This Court, in reversing the judgment appealed from, concluded that

the fact that the lights of plaintiff's car were out "is sufficient to establish the presumption that the sole cause of the accident was not defendant's alleged negligence, and therefore the *res ipsa loquitur* doctrine does not apply."

In the present case it does not appear that another probable—although possible—cause of the accident was due to another person other than defendant. We need not pass upon this weighing of the evidence made by the trial court. Even assuming a contrary view, we insist that the *Kirchberger* case is still distinguishable from the case at bar. It is well to point out that the pronouncement made by the court in that case was based on the failure to establish the agency relationship between defendant and the operator of the vehicle. It was not necessary to decide that point for the purpose of passing upon the question involved. It should have been sufficient for the court, as it was, to consider that it was not satisfactorily established that the operator of the vehicle was an agent or employee of defendant to say that the doctrine of *res ipsa loquitur* was not applicable. The lack of the "exclusive control" requirement appeared from the absence of such relationship. In that case we said:

". . . Considering particularly the fact that in the instant case it was not satisfactorily established that Santos Cruz Ortiz was at the time of the accident an employee or agent of the defendant acting in accordance with the terms of a contract of work, the prerequisite of control of the instrumentality on the part of the defendant is lacking, and therefore the *res ipsa loquitur* doctrine is inapplicable."

On the contrary, what the *Kirchberger* case does is to make clear that the other *probable* cause of the accident must be one from which it may be inferred that there was no negligence; in other words, that there was a *probability* that the accident was caused through plaintiff's negligence in parking his car with the lights out.

■ The principle that if there is another probable cause from which it might be inferred that there was no negligence has the effect of preventing the application of the doctrine, is admitted in other decisions of this Court and of the American jurisdiction: *Cintrón v. A. Roig, Sucrs., supra* at 965 (1953); *The Hygrade No. 18,* 41 F.Supp. 304 (1941); *Martin v. Arkansas Power & Light Co.,* 204 Ark. 41, 161 S.W.2d 383, 385 (Ark. 1942).

■ Lastly, in order that some other cause of the accident may render inapplicable the *res ipsa loquitur* doctrine, such doctrine must not be based on a mere possibility of causation but must be of the category of cause with probability of effects. The evidence tending to show that it was harmless talcum powder does not come within that category and instead it is a mere presumption and nothing else, otherwise we would have to admit that the mere introduction of evidence by defendant would be sufficient, no matter how remote and incredible, to conclude that the inference against it has been rebutted.

In *Danville Community Hospital v. Thompson,* 43 S.W.2d 882, 889 (Va. 1947), it was stated as follows:

"It is no valid objection to the application of the doctrine that by possibility the burn might have occurred in the resuscitator bassinet in the delivery room, for which Dr. McMann might have been responsible. Arnold v. Wood, 173 Va. 18, 3 S.E.2d 374. That is not the evidence. The plaintiff 'is not required to exclude every possibility that the injury might have been caused through some means for which the defendant is not responsible.' United Dentists, Inc. v. Bryan, supra [158 Va. 880, 164 S.E. 556]. 'The test is whether the circumstances are such as would satisfy a reasonable and well-balanced mind that the accident resulted from the negligence of the defendant. The testimony need not exclude everything which the ingenuity of counsel may suggest as having possibly caused or contributed to the injury.' Rozumailski v. Philadelphia Coca-Cola Bottling Co., 296 Pa. 114, 145 A. 700, 701."

The testimony of Dr. Jiménez López may be used to justify the little credit which the court gave to the suggestion that the harmless talcum powder was the probable cause of the accident:

"Q. Doctor, that is not my question. My question is whether prior hereto, on some occasion prior to this which we are discussing, you saw anything similar to that.
A. No.
Q. You had never seen it?
A. Never.
Q. Suspended in any place, in any kind of liquid? Nothing like it had ever occurred?
A. Not in a container, in a blood container and with dust over the blood, I have not seen it.
Q. I mean, and in the sufficient amount . . .
A. To be able to notice it.
Q. In order to notice it, you had never seen it?
A. No, sir.
Q. In your professional experience which you have, doctor, since 1938 as a surgeon, was it ever necessary for you to call off an operation for this reason, for fear of contamination? Of contamination to the patient?
A. I do not recall.
Q. I mean, what did you say?
A. I do not recall any.
Q. Ah! You don't recall any?
A. No.
Q. In other words, you don't recall any acts such as this that ever occurred to you?
A. In my practice, no, sir."

█ It would be absurd to think that the mere possibility that the cause of the accident has been the harmless talcum powder relieves defendant from its duty to rebut the inference against it. That is not the spirit underlying the *res ipsa loquitur* doctrine. In *Cobb* v. *Marshall Field & Company*, 159 N.E.2d 520, 525 (Ill. 1959), citing *Bollenback* v. *Bloomenthal*, 173 N.E. 670, 671 (Ill. 1930), the court said:

" 'The presumption or inference of negligence raised by the application of this doctrine [*res ipsa loquitur*] is not absolute or conclusive but is rebuttable, and vanishes entirely when any evidence appears to the contrary.'

". . . The words in Bollenback . . . are frequently quoted and have caused much difficulty. If taken literally they could lead to absurd results. The strongest case for a plaintiff could be nullified by the weakest evidence of a defendant."

■ The fact that Dr. Jiménez López was acting in his capacity of private physician, not as medical director of the hospital, is no impediment to relieve the Presbyterian Hospital from its duty to provide proper facilities to the patient for her protection. Having failed to account for the occurrence of the accident, the inference that due care was not exercised to provide such facilities should prevail against it. In *Rice* v. *California Lutheran Hospital, supra* at 864, 865, the patient suffered burns on her arm with hot tea which a hospital nurse had placed on her bed. The hospital alleged that in serving the tea the nurse was complying with orders of plaintiff's physician and that he was therefore responsible. The Supreme Court of California sustained plaintiff, since it was incumbent on the hospital to exercise due care and it could not escape its responsibility to provide reasonable care to the patient by shifting it to the doctor. In support of its reasoning, the court further said, citing *Guilliams* v. *Hollywood Hospital*, 18 Cal.2d 97, 103, 114 P.2d 15 (1941):

". . . The nurses attending plaintiff were employed by the defendant hospital and were not special nurses in the employ of either plaintiff or her physician. Likewise, the person who served the tea was defendant's employee. The defendant was bound to supply proper attendance and care to plaintiff and that duty extended to furnishing and supervising the furnishing of nourishment. It cannot be said that because the doctor ordered tea to be served plaintiff, he was making the nurses and the server of the tea his servants and employees to the exclusion of defendant hospital as the employer. The hospital still had direction

and control over its employees and was responsible for the care to be observed by them in the process."

▮ Dr. Jiménez López' character of private physician at that moment did not have the effect of changing the status of the nurses in charge of the asepsis of the room, notwithstanding they could be momentarily under the physician's orders. The Presbyterian Hospital continued to have, through the former, the control and direction of the rooms. In *Ybarra* v. *Spangard*, 25 Cal.2d 486, 492, 493, 154 P.2d 687 (Cal. 1944), the court ordered:

". . . Every defendant in whose custody the plaintiff was placed for any period was bound to exercise ordinary care to see that no unnecessary harm came to him and each would be liable for failure in this regard. Any defendant who negligently injured him, and any defendant charged with his care who so neglected him as to allow injury to occur, would be liable. The defendant employers would be liable for the neglect of their employees; and the doctor in charge of the operation would be liable for the negligence of those who became his temporary servants for the purpose of assisting in the operation.

". . . . . . . .

". . . We merely hold that where a plaintiff receives unusual injuries while unconscious and in the course of medical treatment, all those defendants who had any control over his body or the instrumentalities which might have caused the injuries may properly be called upon to meet the inference of negligence by giving an explanation of their conduct."

We shall not discuss here the physician's liability as such, since the action against him was dismissed by agreement of the parties.

▮ The fact that plaintiff has been unable to account for the cause of the accident, notwithstanding the allegation of specific acts of negligence, does not bar the application of the doctrine. In *Román* v. *Mueblería Central*, 72 P.R.R. 320, 323 (De Jesús) (1951), it was said:

". . . a considerable number of jurisdictions hold that when the circumstances of the case are of such nature that the accident would not have occurred except for defendant's sole negligence and the plaintiff has not the means within his reach to prove the cause of the accident, the doctrine is applied despite the allegation of specific acts of negligence which the plaintiff attempted but was unable to prove. *Tenney* v. *Enkeball*, 158 P.2d 519 (Ariz. 1945); *Johnson* v. *Greenfield*, 198 S.W.2d 403 (Ark. 1946); *Firszt* v. *Capitol Park Realty Co.*, 120 Atl. 300 (Conn. 1923); *Morgan* v. *Yamada*, 26 Haw. 17 (1921); *Partin's Adm'r* v. *Black Mountain Corporation*, 58 S.W.2d 234 (Ky. 1933); *Lawson* v. *Clawson*, 9 A.2d 755 (Md. 1939); *McNamara* v. *Boston & M. R.R.*, 89 N.E. 131 (Mass. 1909); *McNeill* v. *Durham & C.R. Co.*, 41 S.E. 383 (N.C. 1902); *Markowitz* v. *Liebert & Obert*, 43 A.2d 794 (N.J. 1945); *Boyd* v. *Portland Electric Co.*, 66 Pac. 576 (Ore. 1901); *Boykin* v. *Chase Bottling Works*, 222 S.W.2d 889 (Tenn. 1949); *Blaisdell* v. *Blake*, 11 A.2d 215 (Vt. 1940); *Washington-Virginia Ry. Co.* v. *Bouknight*, 75 S.E. 1032 (Va. 1912); *D'Amico* v. *Conguista*, 167 P.2d 157 (Wash. 1946); Fleming James, Jr., Proof of the Breach in Negligence Cases, 37 Va. L. Rev. 179, 215 *et seq.* (1961) and F. Fernández Cuyar, *Res Ipsa Loquitur*, I *Revista de Derecho, Legislación y Jurisprudencia* 64 (1935)."

See, also, Prosser, Torts 214 (2d ed. 1955); *Rodríguez* v. *White Star Bus Line*, 54 P.R.R. 294 (1939).

■ The effect which this Court has acknowledged to the *res ipsa loquitur* doctrine is that it establishes a permissive inference of negligence. It authorizes but does not bind the court to deduce that there was negligence under the circumstances in which the accident occurred. *Hermida* v. *Feliciano*, *supra* at 59; *Sweeney* v. *Erving*, 228 U.S. 233 (1913): ". . . what it does is to provide that, once the facts warranting its application are established, the plaintiff is relieved from the ordinary rule requiring him to show in the first instance that the defendant was negligent, giving rise instead to an inference of negligence, as a matter of circumstantial evidence, without any direct proof thereof . . . and

the burden of going forward with the evidence is shifted at that point to defendant who must show that he exercised due care." *Rodríguez* v. *Aponte*, 78 P.R.R. 719, 724 (1955); Prosser, *Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241 (1936). On the procedural effect of the doctrine, see *Ramos* v. *Water Resources Authority*, 86 P.R.R. 572 (Blanco Lugo) (1962).

The hospital having failed to show that the accident was not due to its negligence, the inference of negligence which the doctrine entails should prevail against it. See *Román* v. *Mueblería Central, supra* at 323; *Martínez* v. *U.S. Casualty Co.*, 79 P.R.R. 561, 567 (1956). In inferring negligence the trial court exercised its sovereign power to weigh the facts. We believe that it exercised the same reasonably. *Hermida* v. *Feliciano, supra* at 59. It has been the policy of this Court to uphold the weighing of the evidence made by trial judges, except in cases of manifest error, clear arbitrariness, or prejudice and passion. *Commonwealth* v. *Cía. de Ferrocarriles de P.R.*, 83 P.R.R. 565, 568 (1961).

## II

The second error assigned challenges the amount awarded to appellee as excessive and disproportionate to the nature of the damages. In our opinion the error was committed. An examination of the evidence has convinced us. The compensation awarded will be modified as follows: The sum of $5,000 awarded to plaintiff will be reduced to $3,000 and that of $800 awarded to her husband to $300. And as thus modified, the judgment appealed from will be affirmed.