# CHARLESTON

## HOGAN v. HOSPITAL COMPANY

Submitted June 7, 1907.    Decided December 3, 1907.

1. HOSPITAL—*Liabilities—Torts of Employes.*

A hospital, incorporated and conducted for private gain and for the benefit of the stockholders thereof, is liable in damages to its patients for the negligence or misconduct of its officers and employes. (p. 89.)

2. SAME—*Care of Patients.*

A patient sent to such hospital is entitled to such reasonable care and attention for his safety as his mental and physical condition may require. (p. 90.)

Error to Circuit Court, Harrison County.

Action by Edward Hogan against the Clarksburg Hospital Company. Judgment for defendant, and plaintiff brings error.

*Reversed.    Remanded.*

SPERRY & SPERRY, for plaintiff in error.

DAVIS & DAVIS and OSMAN E. SWARTZ, for defendant in error.

McWHORTER, JUDGE:

Edward Hogan brought his action of trespass on the case in the circuit court of Harrison county against the Clarksburg Hospital Company, a corporation. The defendant demurred to plaintiff's declaration, which demurrer was overruled, the defendant then pleaded not guilty and a jury was empannelled to try the case. When the evidence of the plaintiff was all in the defendant moved the court to strike out the plaintiff's evidence, which motion the court sustained and the jury returned a verdict for the defendant. Plaintiff moved the court to set aside the verdict of the jury and grant him a new trial which motion was overruled and to which several rulings of the court the plaintiff excepted and says that the court erred in sustaining the motion to strike out the evidence and also in overruling the plaintiff's motion to set aside the verdict and grant a new trial.

Three witnesses were examined in the case: the plaintiff; Dr. Showalter and Miss McGann one of the nurses in the hospital at the time the plaintiff was an inmate. Plaintiff's own testimony shows that he was subject to epileptic fits prior to the time of his being taken to the hospital of the defendant in February, 1905; that he was suffering from one of his fits at the time he was taken to the hospital and knew nothing of being taken there, and did not know who was treating him but says his bartender was waiting on him before he went to the hospital, and when asked what physician, if any, he had, stated that "Dr. Johnson was said to be the man," but said that he did not know anything about who was treating him at that time.

Miss McGann testified that she saw two men bring Hogan into the hospital from the ambulance; and that she did not know his condition. She says, "I saw them bring him in, two men helped him in, and then I did not see him again until after he was burned;" that he was placed in the front room on the second story on the right hall; that he was brought there, she thinks, about 9:30 o'clock in the morning; that the room in which he was placed was one of the best in the house, had two beds in it and was heated by a gas fire, an open fire without a grate, with an asbestos back. She says she went up stairs when the tray bell rang for dinner, an odor quite intense met her and she went to plaintiff's

room and found him in the middle of the floor; "his night-gown was mostly burned all off, some pieces were burned in strips.' He didn't know himself; he was quiet, making no racket at all." That both beds were ruffled up when she found them and both were on fire, were not blazing, the mattress on one was burning considerably, nobody was in the room except plaintiff; that Miss Leon was his nurse but had gone off duty before he was burned, "we always get off two hours when we had time from ten to twelve, something like that." When asked to describe plaintiff's burns witness said "His hand was burned very bad, his side and his arm; scars are there, I think, show better than I can tell you." And when asked how long he had been in the building when he was burned, answered, "It couldn't have been more than an hour or an hour and a half since he was brought in. He was brought in that morning and when the tray bell rang was the time I found him." When asked, "How long after Mr. Hogan was burned before he regained consciousness and knew about his injury? A. I don't know; I know he was there several weeks before he knew he was burned. For the first time or two he did not say anything about his burns, but after that he let us know he was burned when we dressed them. It was several weeks before he knew he was burned at the City Hospital."

From the plaintiff's own testimony he seems to have been entirely oblivious as to when or how he got to the hospital, or when he was burned. He states that when he recovered consciousness he had an interview with the superintendent, Dr. Payne, who wanted to know who was going to pay his bills, when he told him he would pay them himself that there was nobody else to pay them. He told the doctor he had a check book in his clothes, that they took his clothes out of the room and he asked the doctor to get his check book; that he went away and he didn't see him again for three or four days when the doctor came back and apologized and told him that he had learned that he was all right; that he wanted to settle with him at the end of each week and get out of the hospital but the doctor wouldn't let him go. Plaintiff exhibited two checks, one for $75 payable to the Clarksburg City Hospital, the other for $60 dated April 11th and 19th respectively, 1905, the amount he had paid the hospital,

and stated he also paid Dr. Johnson $47 for treatment. The plaintiff also introduced Dr. U. W. Showalter and proved that he was a stockholder in the defendant company and that it operated that hospital when plaintiff was there.

Plaintiff in error, by counsel, says the case presented here involves two questions: "1. What degree of care should be required of a hospital company maintaining a hospital for receiving and treating diseased persons for hire or profit, toward persons committed to its care, while on its premises and under its control; the failure to exercise which, constitutes actionable negligence? 2. Whether the evidence presented in this case makes a *prima facie* case of negligence, such as should have been submitted to the jury." Counsel for defendant in error agree that these are the propositions involved and say that their views on the first proposition differ very little from those advanced by plaintiff's cousel, and claim that the rule applied to public or charitable institutions does not apply to this case, citing from Thompson on Negligence, sections 6711 and 6713, to support their contention that a hospital is nothing more than an aggregation of physicians and surgeons and their assistants, and that the hospital should conform to the rules laid down for physicians and surgeons in said sections; and also cite *Lawson* v. *Conaway*, 37 W. Va. 159, and quote from the syllabus, point 3, in said case the following: "The physician is bound to bestow such reasonable ordinary care, skill and diligence, as physicians in the same neighborhood in the same general line of practice ordinarily have and exercise in like cases." Which case was an action against a physician for malpractice in the treatment of a broken arm. All the authorities cited are inapplicable to the case at bar. The question here does not arise as to the skill, care and attention of any physician. The plaintiff had just been put into the hospital and it does not appear from the evidence that he had yet received the attention of any physician. He had simply been received by the nurses and placed in a room. That which is complained of in this case is not the wrong or unskillful application of remedies but the neglect to give that reasonable and ordinary care and attention which was needed and due to plaintiff after being received into the hospital at the hands of the employes of the defendant. The incorporators and stockholders of the defendant procured their

charter for the purpose of carrying on a business in their corporate capacity, not for charitable purposes but for private gain, and held themselves out to the public as an institution wherein the sick and the diseased would receive medical treatment and proper care. The objects and purposes stated in their charter being: ''To conduct a general hospital for the treatment of all diseases, both medical and surgical; to conduct a training school for nurses and to grant diplomas or certificates of graduation to persons completing the prescribed course of instructions; to buy, sell, lease, or rent all real estate and personal property necessary to conduct and operate a general hospital and training school for nurses or either or both; and to transact all other business and to do all things necessary to properly conduct the business herein mentioned.''

As defined in 21 Cyc. 1106, ''A hospital created and endowed by the government for general charity is a public corporation; and a public hospital may be defined in general as an institution owned by the public and devoted chiefly to public uses and purposes.'' And at page 1110, same book, ''A private hospital is one founded and maintained by a private person or corporation, the state or municipality having no voice in the management or control of its property or the formation of rules for its government.'' And at page 1111, same book, it is said: ''A private hospital which is in its nature a charitable institution is not liable in damage to patients for the negligence or misconduct of its officers or employes, but the rule is otherwise where the hospital is not a charitable institution.'' And authorities cited.

It cannot be claimed that the defendant hospital here is a charitable institution. It was chartered and organized by four physicians and one other stockholder for the profits that could be made out of it, for their private gain. These physicians were in control of the hospital and sent their patients to it to be treated and cared for in the usual and ordinary way that patients are treated and cared for in hospitals, and patients so sent to the hospital were entitled to such oversight, care and attention as their mental and physical condition might require. The plaintiff when received was shown to be in an unconscious condition but not entirely helpless physically. It is not stated that he was carried into

the hospital but that "he was helped in by two men," implying that he could move about by the help of others. In *Railroad Co.* v. *Wood*, 95 Tex. 223, 66 S. W. 449, 93 Am. St. 834, it is held: "If a railway corporation maintaining a hospital for its employes suffers one of them, while delirious from smallpox, to escape from the detention camp and thereby to communicate the disease to another, the latter may recover of the corporation for the damages thus inflicted on him, if it or any of its employes was guilty of negligence to which such escape was due." In that case it was held that the diligence required of the railway company, maintaining a hospital or detention camp in which one of its employes was confined while suffering from smallpox, depended upon the character of the disease and the danger of communicating it to others; that it assumed the duties of using ordinary care to prevent him from exposing himself in deliriums, or being exposed otherwise, so as to communicate the disease to others. In *Chapin* v. *Y. M. C. A.*, 165 Mass. 280, it is held: "If, while much of the work of a corporation, which has no capital stock and applies all its revenues to the purposes of its organization, is of a charitable nature, its purposes are also social and include the giving of lectures and of theatrical and other entertainments for the benefit of its members, the provision of a gymnasium and of athletic sports for promoting their health and the sale of food at a coffee or lunch counter, it has no right to exemption from liability for injuries occasioned by its own negligence to persons rightly on its premises." See also *Davis* v. *Central Congregational Society*, 129 Mass. 367; *Donnelly* v. *Boston Catholic Cemetery Association*, 146 Mass. 163 and *Newcome* v. *Boston Protective Department*, 151 Mass, 215.

There can be no question about the liability of a hospital, which is being conducted for private gain and not for charitable purposes, for damages to its patients through the negligence or misconduct of its officers and employes. It is bound to exercise that degree of care towards its patients placed therein measured by the capacity of such patients to look after and provide for their own safety. It is the duty of such hospital to employ only competent physicians and nurses and to treat such patients with such skill and care as ordinarily obtains in the conduct of such institutions, and to protect its

patients in such manner as their condition may render neces-
sary, and such degree of care and diligence should be in
proportion to the physical or mental ailments of the patient.
rendering him unable to look after his own safety. The mo-
tion to strike out the evidence, taking from the jury the con-
sideration thereof and thereby directing a verdict for the
defendant, is similar to a demurrer to the evidence which en-
titles the plaintiff to the benefit of all the facts proved by the
evidence introduced and to all the facts and inferences which
might be reasonably drawn or taken as true from any and all
the facts actually proved by the evidence; and if such facts
and inferences together are sufficient to make a *prima facie*
case of negligence, then the same should be submitted to the
jury. The facts here proved were that four physicians were
stockholders in the company and were conducting the same
for their private benefit. It may reasonably be inferred that
Dr. Johnson, one of the physicians, sent the defendant to the
hospital for treatment as it is shown that he was his patient.
It is proved that the plaintiff was suffering from epileptic
fits and that he was sent to the hospital while under the in-
fluence of epilepsy, and was unconscious knowing nothing of
what was transpiring. While it is contended by defendant
in error that the plaintiff, when placed in the hospital, was
wholly unable, physically, to walk alone, yet the inference
is conclusive that he had sufficient physical ability to get
about in the room. He was left alone, there were two beds
in the room in which he was placed and in which there was
an open gas fire, both beds were rumpled, or, as stated by
the witness, McGann, were "ruffled" and both on fire, show-
ing beyond question that after he had gotten to the fire and
ignited his clothes he had been to the beds and fired them
from his own burning clothes, and they were both burning
when Miss McGann, the witness, entered the room and found
him "in the middle of the floor," his clothes burning as stat-
ed by her. It is to be reasonably inferred further that some-
time elapsed from the time he came in contact with the fire
until she found him, as no blaze was seen either on the beds
or plaintiff's clothes, so they must have been slowly burning
for sometime. It is suggested by counsel for defendant in
error that in the absence of proof, the court will not take ju-
dicial notice of the time required to partially burn a cotton

night-shirt off a man's back, but that all the burning proved might easily have occurred within two minutes or less. This occurrence was in mid-winter, and the inference may readily be drawn that plaintiff's night-shirt was not cotton, and that the material burning was not of a very inflammable nature.

It is claimed by defendant in error that plaintiff failed to prove his condition when brought to the hospital. It was shown that he was brought there in an unconscious condition, and yet, from the evidence, it must be inferred that while possibly not able to walk alone he was physically able to get up, but liable to fall in any direction. It is also claimed that he failed to prove that physicians and nurses, treating patients in a hospital, in the exercise of ordinary skill and diligence are constantly in the room with such patients, or, that in the treatment of a person suffering from epilepsy, it was customary for them to remain constantly in the room of such person; and that he failed to prove any facts showing that the defendant's employes might have forseen the possibility of injury to the plaintiff and guarded against it. Taking into consideration the condition of the plaintiff when he was taken to the hospital, that he was unconscious and oblivious to all his surroundings and yet physically able to get up and tumble about, it was very easy to foresee the possibility of the result which came to the plaintiff with an open gas fire burning in the room, by leaving him to look after his own safety. A hospital is not an insurer of its patients against injury inflicted by themselves, or that a patient in a hospital must be attended continuously by a nurse or other attendants as it is claimed would be the case, as a matter of law, if the decision herein of the court below should be reversed, as indicated by defendant's counsel. On the other hand, hospitals will only be required as heretofore to use ordinary and reasonable care and diligence in the treatment and care of their patients. By what has been said the court does not express an opinion as to the weight of the evidence any further than that it was sufficient to go to the jury for their consideration. The court erred in striking out the evidence. We therefore reverse the judgment and remand the case to the circuit court of Harrison county for further proceedings to be had therein.

*Reversed.   Remanded.*