GARTH R. UTTER, *et al.*

*v.*

UNITED HOSPITAL CENTER, INC. *and* LAWRENCE H. MILLS

(No. 13667)

Decided July 12, 1977.

Rehearing Denied October 3, 1977.

704

*Jones, Williams, West & Jones, James C. West, Jr.,* for appellants.

*Steptoe & Johnson, Herbert G. Underwood,* for United Hospital Center.

*Charles G. Johnson,* for Mills.

CAPLAN, CHIEF JUSTICE:

On this appeal from a final order of the Circuit Court of Harrison County we are called upon to consider and determine the propriety of the action of that court in setting aside a jury verdict for the plaintiff and entering judgment for United Hospital Center, Inc., one of the defendants in that trial. We reverse and reinstate the jury verdict.

Giving rise to this controversy was an injury sustained by the plaintiff, Garth R. Utter. On August 25, 1973, Mr. Utter, while working at the Marshville Community Center in Harrison County, fell from a ladder sustaining serious and severe injuries to his right wrist, his elbow and his back. He was immediately taken to United Hospital Center where he was examined and treated. The examination revealed a comminuted compound fracture of the right wrist, a posterior dislocation of the right elbow and a compression fracture of the second lumbar vertebra.

The plaintiff's physician, Lawrence H. Mills, M.D., applied a cast to his right arm, the cast extending from above the elbow to below the knuckles of the right hand. After further emergency room treatment he was admitted as a patient in defendant hospital. No complaint is registered concerning the treatment received by the plaintiff during his first forty-eight hours in the hospital. However, it is alleged by the plaintiff that beginning

with the 7 A.M. to 3 P.M. shift on August 27, 1973 and continuing through August 28, 1973, when the plaintiff was removed to another hospital, the treatment and care rendered by the nurses and hospital personnel was a deviation from express hospital policy and constituted negligence.

Mr. Utter's condition continued to worsen and on the night of August 28, 1973 he was transferred to the West Virginia University Hospital at Morgantown. It was there determined by Jack L. LeFrock, M.D., a specialist in infectious diseases, that the only hope of saving the plaintiff's life was to transfer him to a hospital where a hyperbaric oxygen tank was available for treatment. He was transferred to the University of Maryland Hospital for that purpose where he received seven hyperbaric oxygen treatments. His right arm was then amputated at the shoulder joint.

The civil action subsequently instituted by the plaintiff and his wife against the doctor who originally treated him and the defendant hospital resulted in a jury verdict for plaintiff Garth R. Utter in the sum of $333,000.00 and for his wife in the amount of $1,320.00. This verdict was against both the doctor and the hospital and judgment was entered thereon. Motions to set aside the verdict were filed by both defendants and the motion of the doctor was overruled. However, the court sustained the motion of United Hospital Center, Inc. and entered judgment for it. Although the judgment became final as to the doctor, his appeal having been denied by this Court, this appeal is prosecuted to effect the reinstatement of the jury verdict against the hospital.

The sole issue is whether, upon consideration of the evidence, the court erred in setting aside the jury verdict and entering judgment for the defendant hospital.

In evaluating the evidence in relation to the actions or omissions of the nurses who treated the plaintiff and for the purpose of determining their duties and responsibilities it is necessary to consider the following declared

hospital policy as set out in the manual of the Department of Nursing:

"If a Registered Professional Nurse has any reason to doubt or question the care provided to any patient or feels that appropriate consultation is needed and has not been obtained, she shall direct such question of doubt to the attending practitioner. If, after this, she still feels that the question has not been resolved, she shall call this to the attention of the Departmental Chairman. Where circumstances, in his opinion, are such as to justify such action, the Chairman of the Department may himself request the consultation. In such cases, two consultants shall be named by the President of the Medical Staff. If both of said consultants are in agreement, the attending practitioner will be expected to accept their recommendations."

Upon examination of the record, with particular attention to the testimony of the nurses, the treating physician, the hospital authorities and plaintiff Ruth Utter and taking into consideration the requirements of the above quoted provision of the nursing manual, we find that there was credible evidence that the defendant hospital, acting through its agents and employees, negligently failed to properly treat and care for the injured plaintiff. There is evidence that it negligently failed to observe the development of the plaintiff's condition and, consequently, negligently failed to pursue, through further laboratory testing and medical specialization, procedures which could have benefitted the plaintiff. Certainly, there was credible evidence that the nurses deviated from the requirements of the nursing manual.

Whether the defendant hospital, considering the evidence, was guilty of negligence was a determination to be made by the jury and its findings should not have been disturbed by the trial court. *Abdulla v. Pittsburgh & Weirton Bus Co.,* ____ W. Va. ____, 213 S.E.2d 810 (1975); *Wager v. Sine,* 157 W. Va. 391, 201 S.E.2d 260 (1973); *Howard's Mobile Homes Inc. v. Patton,* 156 W. Va.

543, 195 S.E.2d 156 (1973); *Shields v. Church Bros. Inc.* 156 W. Va. 312, 193 S.E.2d 151 (1972); *Kidd v. Norfolk & Western Railway Co.,* 156 W. Va. 296, 192 S.E.2d 890 (1972).

We do not deem it necessary to quote in detail the testimony of the nurses or other witnesses. It is sufficient to show the situation, as reflected by the record, relating to the care and treatment rendered to the plaintiff. Beginning with the 7 A.M. to 3 P.M. shift on August 27, 1973 and continuing through August 28, 1973, when the patient was transferred, the condition of the patient appeared to deteriorate. This deterioration continued even though the nurses called the treating physician and he, on some occasions, visited and treated the patient.

The record reveals in detail the critical condition of the plaintiff. Several nurses testified that his injured arm was swollen, black, very edematous and that there was a foul-smelling drainage emitting therefrom; that he maintained a high temperature and was sometimes delirious. On the 7 A.M. to 3 P.M. shift, on August 28, 1973, the nurse in charge observed the serious condition of the plaintiff and called the treating physician. She reported that the patient could not retain oral antibiotics and some of the other obvious symptoms. She did not report the delirium. When the doctor did nothing further the nurse did not call the departmental chairman or any other doctor as required by the pertinent provision of the nursing manual.

Dr. Mills, the treating physician, testified that he did not recall that the nurse reported the serious drainage from the arm or that the patient was delirious. He stated that knowledge of these conditions would have been very important and that the nurse's failure to provide this information would be at a variance from the usual and normal standard for a nurse.

Dr. LeFrock testified that "time is of the essense here ... I think time is a very important thing and we have lost from hour 55, let's say, until we got to the Universi-

ty at hour 72, nearly a full day and I think 24 hours dealing with a life threatening infection like this is very important and I think we just saved his life by the skin of his teeth . . ." This emphasizes the importance of imparting such knowledge by the nurse to the doctor and the urgency of the nurse's duty to contact the departmental chairman if no action is taken.

Max Francis, Executive Vice President of United Hospital Center, testified that nursing procedures are governed by policies and procedures implemented by the hospital. He further stated that nurses are expected to comply with the policies applicable to the Department of Nursing. He noted that the plaintiff's case was never brought to his attention during the patient's stay at the hospital. Plaintiff Ruth Utter also testified in detail about the obvious worsening condition of her husband.

Although the nurses who testified may have indicated that they had no reason to doubt or question the treatment afforded Mr. Utter by his doctor, the overall facts may have caused the jury to conclude otherwise. The jury may consider but they are not bound by the testimony of any witness. There is evidence in the record from which the jury could have found that the nurses, or some of them, failed to comply with the requirements of the manual of the Department of Nursing, as promulgated by the defendant hospital. In view of the evidence concerning the critical condition of the plaintiff and of the duties and responsibilities of the nurses, the jury had sufficient basis to support its finding of negligence by the agents and employees of the defendant hospital.

It is contended by the defendant hospital that the nurses contacted the treating physician and did all that their duties required; that they had no reason to believe that the patient was not receiving proper care. The question of the propriety of the action or inaction of the nurses is one to be decided by the jury under the evidence before it.

The tenor of the defendant's contentions indicates that the nurses are being treated unfairly and that they

should not be expected to heal the patient's ills. While registered nurses certainly are not charged with the responsibility of curing patients, they are charged with duties clearly reflected in the record. Nurses are specialists in hospital care who, in the final analysis, hold the well-being, in fact in some instances, the very lives of patients in their hands.

In the dim hours of the night, as well as in the light of day, nurses are frequently charged with the duty to observe the condition of the ill and infirm in their care. If that patient, helpless and wholly dependent, shows signs of worsening, the nurse is charged with the obligation of taking some positive action. Certainly, in the instant case, under the requirements of the nursing manual adopted by the Department of Nursing of United Hospital Center and acknowledged by its officer to be the governing document for nurses' procedures, there was evidence that certain nurses did not fulfill their obligation. The manual provides that if the practioner in charge does nothing or acts ineffectively, the nurse "shall call this to the attention of the Departmental Chairman." Evidence that such procedure was not followed in this case was adduced for jury consideration. One may feel that this places too great a burden on the nurse. In fact, the burden is that of the hospital and if that entity will enforce its requirements better care will result and perhaps more patients will recover.

It is now a well established principle of law in this jurisdiction that, as expressed in Syllabus Point 2 of *Duling v. Bluefield Sanitarium, Inc.*, 149 W. Va. 567, 142 S.E.2d 754 (1965), "A hospital owes to one who is a patient therein a duty to exercise reasonable care in rendering hospital services to the patient and, in the performance of such duty, due regard must be given to the mental and physical condition of the patient of which the hospital, in the exercise of reasonable care, should have knowledge." See *Hogan v. Hospital Company*, 63 W. Va. 84, 59 S.E. 943 (1907).

It is equally well established in this jurisdiction that although the action of a trial court in setting aside a verdict for a plaintiff is entitled to peculiar weight on writ of error, such action will be reversed by this Court when a consideration of all the evidence clearly shows that the case was one for jury determination. *Reese v. Lowry,* 140 W. Va. 772, 86 S.E.2d 381 (1955); *Sargent v. Malcomb,* 150 W. Va. 393, 146 S.E.2d 561 (1966); *Rollins v. Daraban,* 145 W. Va. 178, 113 S.E.2d 369 (1960); and *Henderson v. Hazlett,* 75 W. Va. 255, 83 S.E. 907 (1914). *See, Curry v. Heck's, Inc.,* _____ W. Va. _____, 203 S.E.2d 696 (1974) and *Fielder v. Service Cab Company,* 122 W. Va. 522, 11 S.E.2d 115 (1940).

A further principle of law pertinent to this decision and firmly established by this Court is that it requires a stronger case in an appellate court to reverse a judgment awarding a new trial than a judgment denying a new trial. *Sargent v. Malcomb,* supra; *Graham v. Wriston,* 146 W. Va. 484, 120 S.E.2d 713 (1961); *The Star Piano Company v. Brockmeyer,* 78 W. Va. 780, 90 S.E. 338 (1916).

A review of the record convinces us that the question of whether the defendant hospital was guilty of negligence in the care of the plaintiff was one for jury determination and that the trial court erred in setting the jury verdict aside and entering judgment for the defendant.

The judgment of the trial court is reversed and the jury verdict is reinstated.

*Reversed and jury verdict reinstated.*