**PARK NORTH GENERAL HOSPITAL, Appellant,**

v.

**Lydia G. HICKMAN, Appellee.**

**No. 04–84–00373–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 27, 1985.

Rehearing Denied Jan. 16, 1986.

Joe Meador, San Antonio, for appellant.

Pat Maloney, Jr., J. Elaine Watson, San Antonio, for appellee.

Before CANTU, REEVES and COLEMAN,* JJ.

## OPINION

COLEMAN, Justice (Assigned).

Lydia G. Hickman sued Nathaniel G. Tippit, M.D., for medical malpractice and fraud and joined as a defendant Park North General Hospital. She alleged that the hospital was negligent in granting Tippit hospital privileges. Judgment was rendered on a jury verdict against Tippit and the hospital, jointly and severally, for the sum of $38,250.00 for actual damages. Exemplary damages were awarded the plaintiff in the sum of $500,000.00 against Dr. Tippit and in the sum of $375,000.00 against Park North General Hospital. Only the hospital has appealed.

█ The hospital contends that the trial court erred by overruling its motion for change of venue. A change of venue may be granted in civil causes upon the motion of a party asserting that an impartial trial cannot be had in the county where the action is pending. This motion must be supported by an affidavit of the movant and affidavits of at least three credible persons, residents of the county in which the suit is pending, stating that an impartial trial cannot be had in that county. TEX.R.CIV.P. 257.

Dr. Tippit and the hospital filed a joint motion for change of venue. This motion

---

* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized pursuant to Paragraph (d) of Article 1812, Texas Revised Civil Statutes as amended by H.B. 2244 (Acts 1983, 68th Leg., p. 1912, Ch. 354, Sec. 1, eff. June 16, 1983).

was supported by the affidavit of Dr. Tippit and the affidavits of seven residents of Bexar County. Only two of the affidavits asserted that Park North General Hospital could not receive a fair trial in Bexar County. One other affidavit asserted that because of an article that appeared in a San Antonio newspaper it was the opinion of the affiant that it would be impossible for an impartial trial to be held in Bexar County, Texas. Five affidavits were filed in opposition to the motion for change of venue and in each affidavit the affiant gave an opinion that Dr. Tippit could receive a fair trial in Bexar County. Neither of the affiants expressed an opinion as to whether or not Park North General Hospital could receive a fair trial.

The motion for change of venue stated that because of widespread publicity concerning the case in the television stations, the radio stations, and the newspapers in San Antonio, Bexar County, Texas, it has become impossible for the defendants to obtain a fair and impartial trial in Bexar County, Texas. The attorney representing Park North General Hospital and the attorney representing Nathaniel G. Tippit stated under oath that the allegations set forth in the motion were true and correct. An attorney is authorized to make an affidavit on behalf of his client. TEX.R.CIV.P. 14. The motion to transfer venue was duly made by Park North General Hospital. It then became necessary for the plaintiff to attack by affidavit either the credibility of those making the application, their means of knowledge, or the truth of the facts set out in the application. TEX.R.CIV.P. 258.

This rule has been interpreted by the Supreme Court of Texas. The Court held that this rule provides the only means by which issue can be joined, and is prerequisite to the invocation of the discretionary power of a trial judge to determine if the applicant can obtain a fair and impartial trial. The Court held that if the affidavit is not filed, the trial judge is required to remove the cause. *City of Abilene v. Downs*, 367 S.W.2d 153 (Tex.1963).

An issue was properly raised as to whether Dr. Tippit and Park North General Hospital could secure a fair trial in Bexar County, Texas. The trial court heard testimony which supported his discretionary ruling that a fair trial as to both of the defendants could be held in Bexar County.

The hospital contends that the trial court erred in overruling its motion for instructed verdict and its motion for judgment *non obstante veredicto* because the plaintiff failed to prove that there was an employer-employee, principal-agent, partnership, or joint venture relationship between the hospital and Dr. Tippit. Basically its contention is that a hospital is not liable for the granting or continuing surgical privileges to a doctor where a patient has chosen the physician and the hospital is not otherwise liable. The hospital's position is based upon the case of *Jeffcoat v. Phillips*, 534 S.W.2d 168 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.).

We assume that in *Jeffcoat* the plaintiff alleged a cause of action against the hospital based upon its negligence in granting hospital privileges to Dr. Phillips. The hospital was granted an interlocutory summary judgment which was affirmed. The testimony established that the patient chose Dr. Phillips as her physician prior to his admission into the hospital. In affirming the summary judgment the court relied upon the general rule that no *respondeat superior* liability attaches where the physician is an independent contractor and not an employee or servant of the hospital.

In making this decision the court distinguished the case of *Purcell v. Zimbelman*, 18 Ariz.App. 75, 500 P.2d 335 (1972), on the basis that the American Osteopathic Association has established accreditation requirements which imposed an obligation on the governing authorities of accredited hospitals to screen those who are granted privileges to use the hospital, and that it was a practice among these hospitals to set up committees to carry out that purpose.

The court also distinguished the case of *Darling v. Charleston Community Memorial Hospital*, 50 Ill.App.2d 253, 200

N.E.2d 149 (1964), aff'd, 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966) upon the basis that the hospital's bylaws required consultation and review of staff physicians' work.

Mrs. Hickman introduced into evidence the bylaws, rules and regulations of the medical staff of Park North General Hospital which set out in detail the procedure for the appointment of physicians to the hospital staff. The rules required an investigation by the hospital Credentials Committee to examine the character, professional competence, qualifications and ethical standing of the practitioner through information contained in references given by the practitioner and from other sources available to the committee, including an appraisal from the clinical department in which privileges are sought, whether the practitioner has established and meets all the necessary qualifications for the category of staff membership and clinical privileges requested by him.

The rules also required an annual reappointment process which required a report from the Credentials Committee based upon such member's professional competence and clinical judgment in the treatment of patients, his ethics and conduct, and other matters. Evidence was also introduced to the effect that the standard adopted by Park North General Hospital in its rules was the same general standard employed by other hospitals in the community.

These facts furnish a significant distinction between the case under review and Jeffcoat. Since Jeffcoat was decided, a number of states have adopted the doctrine of corporate responsibility for the quality of medical care. That is, the doctrine that a hospital owes a duty to its patients to exercise reasonable care in the selection of its medical staff and in granting specialized privileges. Johnson v. Misericordia Community Hospital, 99 Wis.2d 708, 301 N.W.2d 156 (1981). In Johnson, there is an extensive discussion of the law as it has developed in other states, the theory of recovery, and the evidence needed to sustain recovery. The Court stated that a hospital will be charged with gaining and evaluating the knowledge that would have been acquired had it exercised ordinary care in investigating its applicants and that the hospital's failure to exercise that degree of care, skill, and judgment that is exercised by the average hospital in approving an applicant's request for privileges is negligence.

For other recent decisions recognizing the duties see: (1) Pedroza v. Bryant, 101 Wash.2d 226, 677 P.2d 166 (1984); (2) Bost v. Riley, 44 N.C.App. 638, 262 S.E.2d 391 (1980); (3) Utter v. United Hospital Center, Inc., 160 W.Va. 703, 236 S.E.2d 213 (1977); (4) Kitto v. Gilbert, 39 Colo.App. 374, 570 P.2d 544 (1977); (5) Corleto v. Shore Memorial Hospital, 138 N.J.Super. 302, 350 A.2d 534 (1975); (6) Ferguson v. Gonyaw, 64 Mich.App. 685, 236 N.W.2d 543 (1975).

The duty was also recognized in Joiner v. Mitchell County Hospital Authority, 125 Ga.App. 1, 186 S.E.2d 307 (1971), aff'd, 229 Ga. 140, 189 S.E.2d 412 (1972). This court suggested that the duty of a hospital to screen physicians seeking admittance to their staff was analogous to the duty of an automobile owner to determine the competency to drive of a person to whom he entrusts his automobile. The basis for the doctrine of negligent entrustment as it has developed in Texas is the defendant's own negligence in permitting his motor vehicle to become a dangerous instrumentality by putting it into the driver's control with knowledge of the potential danger existing by reason of the incompetence or reckless nature of the driver. Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587 (1947).

In order to establish the owner's liability under the doctrine of negligent entrustment a plaintiff must prove:

(1) Entrustment by the owner;

(2) Negligence and entrustment to a driver who the owner knows or should have known is a reckless or incompetent driver;

(3) Negligence by the driver on the occasion in question; and

(4) Proximate causation of the occurrence by the driver's negligence.

*Hines v. Nelson*, 547 S.W.2d 378 (Tex.Civ. App.—Tyler 1977, no writ); *see also*, 8 Tex. Jur.3d *Automobiles* § 299 (1980).

■ Where there is a duty of care owed by a hospital to one of its patients and the hospital negligently breaches that duty, the hospital may be held liable for damages. *Jeffcoat v. Phillips, supra.*

■ We hold that Park North General Hospital had a duty to Mrs. Hickman to exercise reasonable care in the selection of its medical staff and in granting specialized privileges to them. It also had the duty to periodically monitor and review their competency.

■ On September 17, 1982, a subcutaneous mastectomy with reconstruction was performed on Mrs. Hickman by Dr. Tippit. There is evidence that Dr. Tippit was specifically authorized by the hospital to perform plastic surgery and that a subcutaneous mastectomy with reconstruction involves plastic surgery. There is testimony that Dr. Tippit was not competent to perform this procedure. There is testimony that Dr. Wilkerson complained to a doctor who was on the Admissions Committee and to the hospital administrator that Dr. Tippit was not competent to perform this procedure; that on July 8, 1980, he wrote a letter to the administrator again complaining of the fact that Dr. Tippit was being permitted to perform this procedure at the hospital; and that he threatened to resign from the staff if this condition continued.

Dr. Wilkerson also suggested that an investigation be made concerning Dr. Tippit's practice in Las Vegas, Nevada. Members of the committee knew that Dr. Tippit practiced in that city and no investigation was made concerning his practice there. The jury found that during the pre-operative, operative, or post-operative treatment of Lydia Hickman, Dr. Tippit was negligent. There is evidence to support this finding.

The trial court did not err in denying the hospital's motion for instructed verdict and motion *non obstante veredicto.*

■ The trial court defined the term "occasion in question" as referring to that period of time during the pre-operative, operative or post-operative treatment of Lydia Hickman by Nathaniel G. Tippit. Special Issue No. 3 asked:

On the occasion in question, was Park North General Hospital negligent?

The hospital objected to the submission of this issue on the ground that the term "occasion in question," as defined in the court's instruction, referred to an inappropriate period of time insofar as the hospital was concerned.

Plaintiff alleged that the hospital was negligent in failing to adequately screen Dr. Tippit prior to granting him hospital privileges. The inquiry with regard to the hospital should have referred to the time when Dr. Tippit was granted staff privileges and when those privileges were renewed. By use of the term "occasion in question" the jury was precluded from considering the actions of the hospital which the plaintiff contended were negligent. This was error.

■ Finally, the hospital contends that the trial court erred in submitting Special Issue No. 11 over its objections that Mrs. Hickman had filed no written pleadings authorizing said issue. Special Issue No. 11 asked whether the hospital was grossly negligent "in its care and treatment of Lydia G. Hickman."

After all parties at the trial had rested appellee presented a pleading to the trial court stating, in part:

Without objection evidence has been introduced and admitted establishing the wanton disregard on the part of Park North General Hospital for the rules and regulations and standards of this community for allowing staff privileges to a surgeon to perform a subcutaneous mastectomy with reconstruction.

The wording of this proposed trial amendment was not set out in the pleading.

There is no allegation in plaintiff's petition nor in any trial amendment that the hospital was negligent in its "care and treatment" of Mrs. Hickman. The trial court erred in submitting the issue over the proper objection of the hospital.

The judgment of the trial court awarding damages against Park North General Hospital is reversed and the cause is remanded to the trial court for further proceedings in accordance with this opinion.