543 So.2d 209 (1989)
John INSINGA, Etc., Appellant,
v.
Michelle LaBELLA, et al., Appellees.
No. 72322.
Supreme Court of Florida.
April 20, 1989.
Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., and Freidin & Hirsh, P.A., Miami, for appellant.
*210 Henry Burnett of Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, for appellees.
William A. Bell, Tallahassee, amicus curiae for The Florida Hosp. Ass'n.
OVERTON, Justice.
This case is before us to answer the following question certified from the United States Court of Appeals for the Eleventh Circuit pursuant to rule 9.150, Florida Rules of Appellate Procedure:
Whether Florida law recognizes the corporate negligence doctrine and whether it would apply under the facts of this case.
Insinga v. LaBella, 845 F.2d 249 (11th Cir.1988). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const.
The facts as set forth in the Eleventh Circuit's opinion are as follows.
On January 19, 1981, an individual named Morton Canton admitted Mildred Insinga, who was 68 years old at the time, to Biscayne, a hospital in North Miami, Florida. At that time, Canton was masquerading as a medical doctor under the name of "Dr. Michelle LaBella." Mrs. Insinga died on February 6, 1981 while a patient in the hospital. It was subsequently discovered that Canton was not a medical doctor, but rather, a fugitive from justice in Canada where he was under indictment for the manufacture and sale of illegal drugs. Canton had fraudulently obtained a medical license from the State of Florida and staff privileges at Biscayne using the name of Dr. LaBella, a deceased Italian physician.
Insinga filed a wrongful death action against several defendants in the Eleventh Judicial Circuit Court of Florida. The amended complaint contained charges against (1) Dr. LaBella, a/k/a Canton, for negligence in failing to diagnose and properly treat Mrs. Insinga; (2) the Board of Medical Examiners of the State of Florida ("Board"), for negligence in licensing Canton/LaBella; (3) the Department of Professional Regulation of the State of Florida ("Department"), for negligence in issuing a license to Canton/LaBella; and (4) Humana, a Delaware corporation with its principal place of business in Kentucky, for negligence in granting Canton/LaBella medical staff privileges. Because of the presence of two Florida defendants, there was not the requisite diversity of citizenship present to support removal of the case to federal court.
Canton was extradited to Canada and never served with process. The remaining defendants filed motions for summary judgment. During the pendency of these motions, the plaintiff voluntarily dismissed the Department. The Board's motion for summary judgment was granted on sovereign immunity grounds, but the state trial court denied Humana's motion. The state trial court entered a final judgment for the Board on June 3, 1986.
On the Monday following the expiration of 30 days from the date it received notice of the judgment in favor of the Board, Humana, as the sole remaining defendant, removed the case to the United States District Court for the Southern District of Florida....
The jury trial against Humana began on August 25, 1986. In his opening statement, plaintiff's counsel stated that he intended to prove that Canton/LaBella negligently diagnosed and treated Mrs. Insinga and that, had she been properly treated, she would have had a 90% chance of survival. Counsel also said that he intended to prove that (1) Canton/LaBella was not a doctor, but a wanted criminal who had assumed the identity of a dead Italian physician; (2) he had fraudulently obtained a license from the State of Florida and staff privileges at Biscayne; (3) the hospital was negligent in failing to follow its own procedures to verify LaBella's application and because it breached the prevailing standard of care in granting him staff privileges; and (4) such lack of care was the cause of Mrs. Insinga's death. Although it is undisputed that Mrs. Insinga employed "Dr. LaBella" to treat her ailments several months before being *211 admitted to Biscayne, the plaintiff claims that he and his wife relied on LaBella's representation that he had staff privileges at Biscayne in selecting him as her physician.
Prior to the close of the plaintiff's evidence, the district court, sua sponte, directed a verdict in favor of Humana. A written order followed on September 3, 1986, in which the district court concluded that, under Florida law, Humana did not owe Mrs. Insinga any duty of care and that, therefore, the plaintiff failed to state a cause of action against Humana. The district court was persuaded that the case was governed by Reed v. Good Samaritan Hospital Ass'n, 453 So.2d 229, 230 (Fla. Dist. Ct. App. 1984) in which the court held that, "a hospital is not vicariously liable for the tortious acts of an independent contractor such as a physician in private practice to whom it has merely granted staff privileges." See also, Wilson v. Lee Memorial Hospital, 65 So.2d 40 (Fla. 1953). The court distinguished the instant case from Beam v. University Hospital Building, Inc., 486 So.2d 672 (Fla. Dist. Ct. App. 1986), in which the court referred to the corporate negligence doctrine in dictum, on the basis that, unlike the plaintiff in this case, the plaintiff in Beam did not have the opportunity to select his own physician. The district court further noted that, heretofore, the corporate negligence doctrine has not been explicitly adopted in Florida and declined to apply the doctrine to this case... .
Id. at 250-51 (footnote omitted; emphasis added).
On appeal to the United States Court of Appeals for the Eleventh Circuit, Insinga argued that Florida law recognizes the corporate negligence doctrine, which places direct liability on a hospital for failing to properly investigate a medically incompetent applicant for staff privileges. The respondent, on the other hand, argued that the law, as established by the Florida district courts of appeal and applied by the United States district judge, reaffirmed the independent contractor theory requiring a finding of no liability. After concluding that jurisdiction had been properly assumed by the United States District Court, the Eleventh Circuit stated: "[W]e believe that the substantive issue of state law raised by Insinga in this appeal involves a question of Florida law determinative of the cause but which is unanswered by controlling precedent of the Supreme Court of Florida and is appropriate for resolution by the highest court of that state." Id. at 255.
We find it appropriate to rephrase the certified question as follows:
Whether prior to October 1, 1985 (the effective date of section 768.60, Florida Statutes (1985)), hospitals owed a duty to their patients to select and retain competent physicians who, although they are independent practitioners, would be providing in-house patient care through their hospital staff privileges.
For the reasons expressed, we answer the question in the affirmative.
Insinga, as he did in the federal courts, urges that hospitals owe a duty of care to their patients to ensure that only competent physicians are granted staff privileges; that the duty existed at the time this incident arose in 1981; and that a breach of duty occurred when the hospital admitted Dr. LaBella, a/k/a Canton, to staff privileges without properly verifying his credentials, contrary to the prevailing national and state standards and the hospital's own bylaws. Insinga argues that, had such a check been made, the hospital would have known or reasonably should have known that LaBella was an imposter and incompetent to provide medical services in its facility. Insinga relies principally on Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966), and Pedroza v. Bryant, 101 Wash.2d 226, 677 P.2d 166 (1984), which adopted the so-called "corporate negligence doctrine" for hospitals. Insinga also asserts that the legislature's subsequent enactment of section 768.60, Florida Statutes (1985), governing the liability of health care facilities, was merely a statutory codification of the corporate negligence doctrine and is a strong indicator of *212 the duty of care required by public policy prior to enactment. The statute provides in pertinent part:
(1) All health care facilities, including hospitals and ambulatory surgical centers, as defined in chapter 395, have a duty to assure comprehensive risk management and the competence of their medical staff and personnel through careful selection and review, and are liable for a failure to exercise due care in fulfilling these duties.
... .
Each such facility shall be liable for a failure to exercise due care in fulfilling one or more of these duties when such failure is a proximate cause of injury to a patient.
Humana responds by arguing that no duty exists where a patient has independently retained the services of a private physician who has hospital staff privileges except where the hospital has provided the physician to the patient following admission. The hospital strenuously asserts that the case law, as established by the district courts of appeal of this state, support its position, citing Beam v. University Hospital Building, Inc., 486 So.2d 672 (Fla. 1st DCA 1986); Reed v. Good Samaritan Hospital Association, 453 So.2d 229 (Fla. 4th DCA 1984); and Snead v. Le Jeune Road Hospital, Inc., 196 So.2d 179 (Fla. 3d DCA 1967). Also supporting this view in an amicus curiae brief is the Florida Hospital Association which contends that extending the duty to hospitals for the benefit of patients who initially created a doctor-patient relationship through the physician's private office practice would result in the joining of a hospital as a proper party to every suit brought against a private physician who also happened to have hospital staff privileges.
Previously, the substantial weight of authority supported the view that a private physician with hospital privileges was not considered the hospital's servant because the hospital had no right to control the acts of a physician who is an independent contractor, and, consequently, the hospital would not be liable for the independent physician's negligence, nor was it a guarantor of the physician's competence. See, e.g., Robinson v. Crotwell, 175 Ala. 194, 57 So. 23 (1911); Adams v. Boyce, 37 Cal. App.2d 541, 99 P.2d 1044, cert. denied, 311 U.S. 694, 61 S.Ct. 137, 85 L.Ed. 449 (1940); Vanaman v. Milford Memorial Hosp., Inc., 272 A.2d 718 (Del. 1970); Black v. Fischer, 30 Ga. App. 109, 117 S.E. 103 (1923); Hoke v. Harrisburg Hosp., 281 Ill. App. 247 (1935); Pikeville Methodist Hosp. v. Donahoo, 221 Ky. 538, 299 S.W. 159 (1927); Messina v. Societe Francaise De Bienfaissance Et D'Assistance Mutuelle, 170 So. 801 (La. Ct. App. 1936); Hamburger v. Cornell Univ., 204 A.D. 664, 199 N.Y.S. 369 (App.Div. 1923); Van Cleave v. Irby, 204 Okla. 689, 233 P.2d 963 (1951); Kuglich v. Fowle, 185 Wis. 124, 200 N.W. 648 (1924). However, unquestionably, the hospital would be liable if the individual rendering treatment was actually employed by the hospital. See South Highlands Infirmary v. Camp, 279 Ala. 1, 180 So.2d 904 (1965); Schuster v. St. Vincent Hosp., 45 Wis.2d 135, 172 N.W.2d 421 (1969); New Biloxi Hosp., Inc. v. Frasier, 245 Miss. 185, 146 So.2d 882 (1962); and Bing v. Thunig, 2 N.Y.2d 656, 143 N.E.2d 3, 163 N.Y.S.2d 3 (1957).
How strongly the judiciary believed this was the appropriate legal principle is illustrated by a comment in a concurring opinion of the Hawaii Supreme Court concerning reversal of a denial of staff privileges to a doctor, which stated: "Since the hospital is not liable for the independent physician's negligence, it has no need to guarantee that he is competent." Silver v. Castle Memorial Hosp., 53 Haw. 475, 489, 497 P.2d 564, 574 (Abe, J., concurring) (footnote omitted), cert. denied, 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 500 (1972).
The Florida district courts of appeal, to a large extent, have followed this view. In Snead v. Le Jeune Road Hospital, Inc., the district court addressed the alleged negligence of a hospital in permitting a private physician with staff privileges to perform operations on its premises. The plaintiff's complaint was premised upon the doctrine of respondeat superior and a negligence theory in permitting the physician to *213 use the facilities of the hospital. That court rejected the claim, approving the summary judgment rendered in favor of the hospital. In Reed v. Good Samaritan Hospital, Ass'n., the plaintiff asserted that the hospital was liable for tortious acts committed on its premises by a private physician with staff privileges. That decision held that "the law is clear that if the doctor is `an independent contractor, that shield[s] the hospital from vicarious liability.'" 453 So.2d at 230 (quoting Irving v. Doctors Hospital of Lake Worth, Inc., 415 So.2d 55, 56 (Fla. 4th DCA), review denied, 422 So.2d 842 (1982)).
In Beam v. University Hospital, the plaintiff argued that the hospital's admission of him as a patient while unconscious gave rise to an implied contract that the hospital would provide a financially competent physician. That opinion noted that no decision exists recognizing the tort of negligent selection of a financially incompetent physician but recognized that a new principle had been evolving that allowed a claim for negligence in the selection of medically incompetent physicians under the doctrine of corporate negligence. Finally, in the one case allowing hospital liability, the Third District, in Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982), found that two emergency room doctors, who were employed by a distinct corporate entity which had contracted with the hospital for emergency physicians, were found to be agents of the hospital. None of these cases, as noted by the federal appeals court, directly addressed the evolving corporate negligence doctrine.
The issue before us is whether we should recognize the doctrine and adopt as a matter of public policy the principle that a hospital has an independent duty to its patients to assure the competence of its medical staff and personnel through its selection and review processes. The corporate negligence theory raised here has broad implications because it essentially establishes a new independent duty that a hospital owes to a patient to select and maintain competent medical staff to treat hospital patients. Medical staff in this context expressly includes independent private practicing physicians who have been approved for staff privileges and, as such, may admit and treat their patients in the hospital. As one commentator stated: "The hospital's liability is based on a duty of care owed by the institution directly to patients to ensure their safety and welfare while within its confines." Note, Hospital Corporate Liability: An Effective Solution to Controlling Private Physician Incomptence?, 32 Rutgers L.Rev. 343, 360 (1979).
This change in the duty of hospitals concerning independent practicing physicians with staff privileges began with Darling. When the Supreme Court of Washington rendered Pedroza in 1984, adopting the corporate negligence doctrine, it noted that every court that had expressly addressed the issue up to that time had adopted the doctrine. Research reflects that at least seventeen jurisdictions have now adopted a corporate negligence doctrine. See, e.g., Tucson Medical Center, Inc. v. Misevch, 113 Ariz. 34, 545 P.2d 958 (1976); Elam v. College Park Hosp., 132 Cal. App.3d 332, 183 Cal. Rptr. 156 (1982); Kitto v. Gilbert, 39 Colo. App. 374, 570 P.2d 544 (1977); Mitchell County Hosp. Auth. v. Joiner, 229 Ga. 140, 189 S.E.2d 412 (1972); Darling v. Charleston Community Memorial Hosp., 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. denied, 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966); Ferguson v. Gonyaw, 64 Mich. App. 685, 236 N.W.2d 543 (1975); Gridley v. Johnson, 476 S.W.2d 475 (Mo. 1972); Foley v. Bishop Clarkson Memorial Hosp., 185 Neb. 89, 173 N.W.2d 881 (1970); Moore v. Board of Trustees, 88 Nev. 207, 495 P.2d 605, cert. denied, 409 U.S. 879, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972); Corleto v. Shore Memorial Hosp., 138 N.J. Super. 302, 350 A.2d 534 (Super.Ct.Law Div. 1975); Raschel v. Rish, 110 A.D.2d 1067, 488 N.Y.S.2d 923 (App.Div. 1985); Blanton v. Moses H. Cone Memorial Hosp., Inc., 319 N.C. 372, 354 S.E.2d 455 (1987); Benedict v. St. Luke's Hosps., 365 N.W.2d 499 (N.D. 1985); Park N. Gen. Hosp. v. Hickman, 703 S.W.2d 262 (Tex. Ct. App. 1985); Pedroza v. Bryant, 101 Wash.2d 226, 677 P.2d 166 (1984); Utter v. United Hosp. Center, Inc., 160 W. Va. 703, 236 S.E.2d 213 (1977); Johnson v. Misericordia *214 Community Hosp., 99 Wis.2d 708, 301 N.W.2d 156 (1981).
While the term "corporate negligence" may have a much broader connotation, we construe it here to mean that a hospital's liability is founded on the independent duty it owes to its patients. The public policy which justifies placing the expanded responsibility and duty of care on a hospital is based on the present day view that a hospital is a multifaceted health care facility that should be responsible for proper medical treatment on its premises. This view is justified because the hospital is in a superior position to supervise and monitor physician performance and is, consequently, the only entity that can realistically provide quality control. See Pedroza.
For the well-articulated reasons set forth in Pedroza, we find, as a matter of public policy, that hospitals are in the best position to protect their patients and, consequently, have an independent duty to select and retain competent independent physicians seeking staff privileges. We note that the hospital's liability extends only to the physician's conduct while rendering treatment to patients in the hospital and does not extend to his conduct beyond the hospital premises. See Pedroza. Moreover, the hospital will only be responsible for the negligence of an independent physician when it has failed to exercise due care in the selection and retention of that physician on its staff. As have a number of jurisdictions before us,[*] we adopt the corporate negligence doctrine independent of the statute and suggest that, because the issue was raised in the initial trial of this cause, it should apply to this case. We find that the enactment of the 1985 statute expressly codified the doctrine.
EHRLICH, C.J., and McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] The following states have adopted some form of the corporate negligence doctrine: Arizona, California, Colorado, Georgia, Illinois, Michigan, Missouri, Nebraska, Nevada, New Jersey, New York, North Carolina, North Dakota, Texas, Washington, West Virginia, and Wisconsin.